# Syllabus

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Kathryn L. Loomis

PEOPLE v MEAD

Docket No. 156376. Argued on application for leave to appeal October 24, 2018. Decided April 22, 2019.

Larry G. Mead was convicted following a jury trial in the Jackson Circuit Court, Thomas D. Wilson, J., of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), as a fourth-offense habitual offender, MCL 769.12. Defendant was a passenger in a vehicle that had been pulled over by a police officer for an expired license plate. As the officer asked the driver for her license and registration, the officer observed defendant clutching a black backpack on his lap while sitting in the passenger seat. The officer asked the driver to step outside the car, and they were outside defendant's earshot when the officer asked her how she knew defendant. The driver answered that she and defendant had just met; they were traveling in the same direction, and she had agreed to drop him off on her way. The officer obtained the driver's consent to search her person and the vehicle. The officer returned to the car and asked defendant to exit the vehicle. Defendant left his backpack on the passenger floorboard before stepping outside. The officer asked defendant how he knew the driver, and defendant confirmed that they had just met and that she had offered to give him a ride. Defendant gave the officer permission to frisk him for narcotics and weapons. The officer then asked defendant to step away from the vehicle, and the officer searched the passenger side of the vehicle, including defendant's backpack, which contained a digital scale, 5 prescription pills, 9.8 grams of marijuana, and 4.03 grams of methamphetamine. Defendant acknowledged that the backpack was his, and he was arrested. At the preliminary hearing, the officer testified that the driver did not give explicit consent to search the backpack (only the vehicle) and that he did not separately seek defendant's consent to search the backpack. The officer also testified that he believed (but did not confirm) that the backpack belonged to defendant because defendant was hugging it in his lap. Defendant was bound over for trial. In the circuit court, defendant moved to suppress the evidence of methamphetamine in his backpack as the fruit of an illegal search. The court denied the motion, citing *People v LaBelle*, 478 Mich 891 (2007). Defendant was convicted and sentenced to serve 2 to 10 years in prison. Defendant appealed in the Court of Appeals. A unanimous panel of the Court of Appeals affirmed in an unpublished per curiam opinion issued on September 13, 2016 (Docket No. 327881), concluding that because the *LaBelle* order held that the defendant in *LaBelle* lacked standing to contest the search of a backpack after the driver consented to the search, the trial court properly denied defendant's motion to suppress the evidence. Defendant sought leave to appeal in the Supreme Court, and the Supreme Court, in lieu of granting leave to appeal, vacated the Court of Appeals decision and remanded to that Court with directions to consider whether the

*LaBelle* order was distinguishable, whether the record demonstrated that the police officer reasonably believed that the driver had common authority over the backpack in order for the driver's consent to justify the search under *Illinois v Rodriguez*, 497 US 177 (1990), and whether there were any other grounds upon which the search might be justified. 500 Mich 967 (2017). On remand, the Court of Appeals again affirmed defendant's conviction and sentence, holding that the case could not be distinguished from *LaBelle*, that *Rodriguez*'s common-authority framework did not apply to third-party consent searches of containers in automobiles in Michigan, and that no other grounds justified the search. 320 Mich App 613 (2017). Defendant again sought leave to appeal in the Supreme Court, and the Supreme Court ordered oral argument on the application and directed supplemental briefing.

In a unanimous opinion by Chief Justice MCCORMACK, in lieu of granting leave to appeal, the Supreme Court *held*:

A passenger's personal property is not subsumed by the vehicle that carries it for Fourth Amendment purposes. Accordingly, *People v LaBelle*, 478 Mich 891 (2007), was overruled; in its place, the following standard applies: a person may challenge an alleged Fourth Amendment violation if that person can show under the totality of the circumstances that he or she had a legitimate expectation of privacy in the area searched and that his or her expectation of privacy was one that society is prepared to recognize as reasonable.

1. The Fourth Amendment of both the United States and Michigan Constitutions protects against unreasonable searches and seizures. To invoke the Fourth Amendment's protections, a defendant must first establish that he or she had a legitimate expectation of privacy in the area searched. Moreover, the expectation of privacy must be one that society is prepared to recognize as reasonable. Courts must consider the totality of the circumstances in determining whether a defendant had a legitimate expectation of privacy in the area searched. In the usual case, a passenger will not have a legitimate expectation of privacy in someone else's car. However, a person may challenge an alleged Fourth Amendment violation if that person can show under the totality of the circumstances that he or she had a legitimate expectation of privacy in the area searched and that his or her expectation of privacy was one that society is prepared to recognize as reasonable. Accordingly, *LaBelle*'s holding—that "[b]ecause the stop of the vehicle was legal, the defendant, a passenger, lacked standing to challenge the subsequent search of the vehicle"—was overruled. In this case, defendant had a legitimate expectation of privacy in his backpack. Defendant asserted a clear possessory interest in his backpack by clutching it in his lap, and the officer believed that the backpack belonged to defendant because of the way defendant was holding it. Therefore, although defendant had no (and claimed no) legitimate expectation of privacy in the interior of the driver's vehicle, he had a legitimate expectation of privacy in his backpack that society is willing to recognize as reasonable. Defendant was allowed to challenge the search of his backpack on Fourth Amendment grounds.

2. The Fourth Amendment proscribes only unreasonable searches. And searches based on consent are often reasonable. Unless a defendant can identify a flaw in the grant of consent that renders the search unreasonable, consensual searches are wholly valid. There are three ways a court may find that a consent search was unreasonable: consent was not voluntary, the consent-giver lacked authority, or the scope of the search exceeded the consent. It is the prosecution's burden to prove that consent was freely and voluntarily given. Finally, a search is not valid if

police obtained permission to search from a third party who lacked the actual or apparent authority to give consent. In this case, the driver's consent to search the car was voluntary. However, an objectively reasonable police officer would not have believed that the driver had actual or apparent authority over defendant's backpack. The officer testified that he believed the backpack belonged to defendant, and no evidence suggested that the driver had mutual use of the backpack. A backpack is used to transport personal items, which suggests individual ownership rather than common ownership. Moreover, the officer knew at the time of the search that the driver and defendant had just met earlier that night and that the driver was simply giving defendant a ride. Given that brief relationship, a reasonable officer could not conclude that the driver had mutual use of defendant's backpack. And because the driver lacked apparent authority to consent to the search of the backpack, the scope of her consent was irrelevant. Accordingly, the search of the backpack was not based on valid consent and was per se unreasonable. No other exception to the warrant requirement applied. Therefore, the warrantless search of defendant's backpack violated his Fourth Amendment rights.

Court of Appeals opinion reversed, trial court order denying defendant's motion to suppress vacated, and case remanded to the trial court for further proceedings.

Justice CAVANAGH did not participate in the disposition of this case because the Court considered it before she assumed office.

©2019 State of Michigan

# OPINION

Chief Justice:
Bridget M. McCormack

Chief Justice Pro Tem:
David F. Viviano

Justices:
Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh

FILED April 22, 2019

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                No. 156376

LARRY GERALD MEAD,

      Defendant-Appellant.

BEFORE THE ENTIRE BENCH (except CAVANAGH, J.)

MCCORMACK, C.J.

The defendant was a passenger in a car when the police pulled it over, ordered him out, and searched his backpack. He thinks that search was unconstitutional. A straightforward application of well-settled Fourth Amendment jurisprudence—complicated only by a peremptory order of this court, *People v LaBelle*, 478 Mich 891 (2007)—says he's right.

We overrule *LaBelle*, conclude that the defendant had a legitimate expectation of privacy in his backpack, and hold that the warrantless search of the defendant's backpack

was unreasonable because the driver lacked apparent common authority to consent to the search. And we therefore reverse the opinion of the Court of Appeals, vacate the trial court order denying the defendant's motion to suppress, and remand the case to the Jackson Circuit Court for further proceedings not inconsistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

In May 2014, Jackson Police Officer Richard Burkart pulled over Rachel Taylor for driving with an expired plate. As he approached the car to ask for Taylor's license and registration, Burkart observed the defendant, Larry Gerald Mead, in the passenger seat, clutching a black backpack on his lap.

Burkart asked for identification from both and determined through a database search that neither had an outstanding warrant. Although Taylor had admitted that she did not have a valid driver's license, Burkart decided that he would not arrest her but would try to get her permission to search the car. Burkart asked Taylor to step out of the car, out of the defendant's earshot. (Burkart later testified that he "typically" pulls the driver aside to obtain consent because "that way you can get an answer from them that's not influenced by the other people that may be in [the] car.") After a brief conversation, Burkart learned that Taylor had just met the defendant—they were traveling the same direction, and she had agreed to drop the defendant off on her way. Burkart obtained Taylor's consent to search her person and the vehicle.

Once Burkart had obtained Taylor's consent to search, he returned to the car and asked the defendant to get out. The defendant left his backpack on the passenger floorboard

2

before stepping outside.[1]  He permitted Burkart to frisk him for narcotics and weapons. Burkart also asked the defendant how he knew Taylor.  The defendant confirmed that they had met that night at a mutual friend's home and that Taylor had let him hitch a ride.

Burkart requested that the defendant step away from the vehicle, and Burkart then began to search the passenger side.  He opened the defendant's backpack and inside found a digital scale, 5 prescription pills, 9.8 grams of marijuana, and 4.03 grams of methamphetamine.  The defendant acknowledged the backpack was his and was arrested. He was charged as a fourth-offense habitual offender, MCL 769.12, with possession of methamphetamine, MCL 333.7403(2)(b)(*i*).

Officer Burkart testified at the defendant's preliminary examination that Taylor did not give explicit consent to search the backpack (only the vehicle) and that he did not separately seek the defendant's consent to search the backpack.  Burkart also testified that he believed (but did not confirm) that the backpack belonged to defendant because he was hugging it in his lap.

The defendant was bound over for trial.  In the circuit court, he moved to suppress the evidence of methamphetamine in his backpack as the fruit of an illegal search.  The trial court denied his motion, citing this Court's peremptory order in *People v LaBelle*, 478 Mich 891.  The defendant was convicted by a jury and sentenced to serve 2 to 10 years in prison.

The defendant appealed.  A unanimous panel of the Court of Appeals affirmed, holding that the trial court properly denied defendant's motion to suppress the evidence

---

[1] The defendant claimed that Burkart ordered him to leave the backpack in the car.  Burkart did not recall doing so.

3

because our *LaBelle* order held that the defendant lacked standing to contest the search of the backpack after the driver consented to the search of the car. *People v Mead*, unpublished per curiam opinion of the Court of Appeals, issued September 13, 2016 (Docket No. 327881). The defendant sought leave to appeal in this Court. In lieu of granting leave to appeal, we vacated the Court of Appeals decision and remanded to that Court with directions to consider: "(1) whether this Court's peremptory order in *People v LaBelle*, 478 Mich 891 (2007), is distinguishable; (2) whether the record demonstrates that the police officer reasonably believed that the driver had common authority over the backpack in order for the driver's consent to justify the search, see *Illinois v Rodriguez*, 497 US 177, 181, 183-189; 110 S Ct 2793; 111 L Ed 2d 148 (1990); and (3) whether there are any other grounds upon which the search may be justified." *People v Mead*, 500 Mich 967, 967 (2017).

On remand, the Court of Appeals again affirmed the defendant's conviction and sentence, holding that the defendant's case could not be distinguished from *LaBelle*, that *Rodriguez*'s common-authority framework does not apply to third-party consent searches of containers in automobiles in Michigan, and that no other grounds justified the search. *People v Mead (On Remand)*, 320 Mich App 613, 617, 621, 627; 908 NW2d 555 (2017). Defendant again sought leave to appeal in this Court. We ordered oral argument on the application and directed supplemental briefing on these issues:

> (1) whether *Illinois v Rodriguez*, 497 US 177, 181, 183-189; 110 S Ct 2793; 111 L Ed 2d 148 (1990), should control the resolution of the question whether the police officer had lawful consent to search the backpack found in the vehicle; (2) whether the record demonstrates that the officer reasonably believed that the driver had common authority over the backpack in order for the driver's consent to justify the search; and (3) whether there are any other

4

grounds upon which the search may be justified or the evidence may be deemed admissible. [*People v Mead*, 501 Mich 1029, 1030 (2018).]

## II. ANALYSIS

To resolve this case, we must determine whether the challenged search infringed an interest the Fourth Amendment was designed to protect, and if so, whether the search complied with the Fourth Amendment. But we cannot address those questions without first ironing out a wrinkle in our jurisprudence—our peremptory order in *People v LaBelle*. In *LaBelle*, we held that passengers categorically lack "standing" to challenge a search of the vehicle in which they were traveling. We also held that the search of LaBelle's (the passenger's) backpack was valid because the officer had authority to search the passenger compartment (based on either the driver's consent or, in the alternative, as a search incident to arrest) and "[a]uthority to search the entire passenger compartment of the vehicle includes any unlocked containers located therein, including the backpack in this case." *LaBelle*, 478 Mich at 892. In so holding, *LaBelle* announced two black-and-white rules in an area of the law full of shades of gray. The Fourth Amendment demands nothing more or less than reasonableness. And reasonableness does not lend itself to bright-line rules.

### A. "STANDING"

The Fourth Amendment of the United States Constitution—like Article 1, § 11 of the 1963 Michigan Constitution, whose protections have been construed as coextensive with its federal counterpart, see *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011)—protects against unreasonable searches and seizures. To invoke the Fourth Amendment's protections, a defendant must first establish that he had a legitimate

5

expectation of privacy in the area searched.[2]  *Rakas v Illinois*, 439 US 128, 148-149; 99 S

Ct 421; 58 L Ed 2d 387 (1978); *People v Smith*, 420 Mich 1, 17-18; 360 NW2d 841 (1984)

(adopting the *Rakas* "legitimate expectation of privacy" test).  Moreover, the expectation

of privacy must be one that society is prepared to recognize as reasonable.  *Smith*, 420

Mich at 28.  Courts must consider the totality of the circumstances in determining whether

a defendant had a legitimate expectation of privacy in the area searched.  *Id*.

In the usual case, a passenger will not have a legitimate expectation of privacy in

someone else's car.  As *Rakas* explained, "a passenger *qua* passenger simply would not

normally have a legitimate expectation of privacy" in areas like the glove compartment or

trunk.  *Rakas*, 439 US at 148-149.  But "*Rakas* did *not* hold that passengers cannot have an

expectation of privacy in automobiles."  *Byrd v United States*, 584 US ___, ___; 138 S Ct

1518, 1528; 200 L Ed 2d 805 (2018) (emphasis added).  In short, the usual case is not every

case; normally does not mean never.

___

[2] Our *LaBelle* order referred to "standing."  Although use of the term persists in search and seizure contests, *Rakas* "dispens[ed] with the rubric of standing" in the Fourth Amendment context.  *Rakas*, 439 US at 140.  Instead, the Court concluded that whether a defendant is "entitled to contest the legality of a search and seizure . . . belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing . . . ."  *Id*.  Thus:

> Analyzed in these terms, the question is whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it.  That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.  [*Id*.]

Put another way, rather than framing it as a standing issue, the question is whether the defendant has stated a substantive Fourth Amendment claim on which relief may be granted.

6

Thus, we overrule *LaBelle*'s holding that "[b]ecause the stop of the vehicle was legal, the defendant, a passenger, lacked standing to challenge the subsequent search of the vehicle." *LaBelle*, 478 Mich at 892. In its place, we reaffirm that a person—whether she is a passenger in a vehicle, or a pedestrian, or a homeowner, or a hotel guest—may challenge an alleged Fourth Amendment violation if she can show under the totality of the circumstances that she had a legitimate expectation of privacy in the area searched and that her expectation of privacy was one that society is prepared to recognize as reasonable. *Smith*, 420 Mich at 28.

Applying that standard here, we conclude that the defendant had a legitimate expectation of privacy in his backpack. To begin with, this case differs from *Rakas* in one important way: the defendant challenges the search of a personal effect—his backpack. The Fourth Amendment specifically guarantees "[t]he right of the people to be secure in their persons, houses, papers, and *effects* . . . ." US Const, Am IV (emphasis added). And the record establishes that the defendant asserted a clear possessory interest in his backpack by clutching it in his lap. Burkart saw the defendant with "a black backpack sitting in his lap that he kind of had his arms around," and Burkart believed that the backpack belonged to the defendant because of the way the defendant was holding it. "[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of [the] right to exclude." *Rakas*, 439 US at 144 n 12; see also *Byrd*, 584 US at ___; 138 S Ct at 1528. And a passenger's personal property is not subsumed by the vehicle that carries it for Fourth Amendment purposes. See, e.g., *United States v Welch*, 4 F3d 761, 764 (CA 9, 1993) ("The shared control of 'host' property does not serve to forfeit the expectation of privacy in containers within that property."), citing *United States*

7

*v Karo*, 468 US 705, 725-727; 104 S Ct 3296; 82 L Ed 2d 530 (1984) (O'Connor, J., concurring). A person can get in a car without leaving his Fourth Amendment rights at the curb.

Thus, although the defendant had no (and claimed no) legitimate expectation of privacy in the interior of Taylor's vehicle, he had a legitimate expectation of privacy in his backpack that society is willing to recognize as reasonable. We reverse the Court of Appeals; the defendant may challenge the search of his backpack on Fourth Amendment grounds.

## B. CONSENT

Because the search of the defendant's backpack "infringed an interest of the defendant which the Fourth Amendment was designed to protect," *Rakas*, 439 US at 140, we must decide whether the search was lawful. The defendant thinks not, but the prosecution believes that the driver's consent to search the car authorized the officer to search the defendant's backpack. The Fourth Amendment proscribes only unreasonable searches. And searches based on consent are often reasonable: "it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Florida v Jimeno*, 500 US 248, 250-251; 111 S Ct 1801; 114 L Ed 2d 297 (1991). Unless a defendant can identify a flaw in the grant of consent that renders the search unreasonable, consensual searches are "wholly valid." *Schneckloth v Bustamonte*, 412 US 218, 222; 93 S Ct 2041; 36 L Ed 2d 854 (1973).[3]

---

[3] We want to be precise in describing how the occurrence of the search in an automobile affects the analysis. That the search took place in a car is one fact that may inform whether, based on the totality of the circumstances, a defendant had a legitimate expectation of

There are three ways a court may find that a consent search was unreasonable: consent wasn't voluntary, the consent-giver lacked authority, or the scope of the search exceeded the consent. It is the prosecution's burden to prove that consent was "freely and voluntarily given." *Bumper v North Carolina*, 391 US 543, 548; 88 S Ct 1788; 20 L Ed 2d 797 (1968). Likewise, an otherwise valid consensual search might be unreasonable if the officers exceeded the scope of that valid consent. *Jimeno*, 500 US at 250-251; see also 4 LaFave, Search & Seizure (5th ed), § 8.1, p 9 ("[T]he consenting party, either expressly or by implication, may place conditions upon the consent involving such matters as the time, duration, physical scope, or purpose of the search being consented to."). And a search is not valid if police obtained permission to search from a third party who lacked the actual or apparent authority to give consent. *Rodriguez*, 497 US at 181, 183-189.

Taylor's consent to search the car was voluntary. Only the latter two issues are in dispute: whether an objectively reasonable officer would conclude that Taylor had apparent common authority over the defendant's backpack, and whether the defendant's backpack was within the scope of her consent to search the car.

An officer must obtain consent to search from someone who has the authority to give it. Generally, that means either the property's owner or a third party who shares

---

privacy in the place searched. The law recognizes that expectations of privacy are diminished in an automobile when compared, for example, to a home. *Byrd*, 584 US at ___; 138 S Ct at 1526. Once a court has determined that the defendant had a legitimate expectation of privacy in the place searched, however, there is no "automobile exception" to the requirements for a consent search. The same law governs consent searches whether the place to be searched is a person's pocket, car, or home. Thus we need not "extend" *Rodriguez* to the specific context of automobiles; it is already the rule from *Rodriguez*. See *Rodriguez*, 497 US at 188-189.

common authority over the property. In *Rodriguez*, the United States Supreme Court recognized one more source of consent—a third party with *apparent* common authority. The defendant in that case severely assaulted his girlfriend, Gail Fischer. The defendant and Fischer had lived together in an apartment. But Fischer had moved out almost a month before the assault, taking her clothing with her but leaving behind some furniture and household effects. Fischer led the police to the defendant's apartment, unlocked the door with her key, and gave the police permission to enter. The police arrested the defendant after observing drug paraphernalia and containers of cocaine in plain view. *Rodriguez*, 497 US at 179. The defendant sought to suppress the evidence, arguing that Fischer had no authority to consent to the police officers' entry.

The Court agreed with Rodriguez that the prosecution could not establish that Fischer had common authority over the premises. But it went on to hold that the search still could have been reasonable if Fischer *appeared* to have common authority—if the officers reasonably believed under the circumstances that Fischer had the authority to permit them to enter the defendant's apartment. *Rodriguez*, drawing on other Fourth Amendment jurisprudence, announced the following standard:

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' " that the consenting party had authority over the premises? *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid. [*Rodriguez*, 497 US at 188-189.]

*Rodriguez* is just one more application of the touchstone principle that governs all search and seizure questions—reasonableness.

10

On this point, we again break with *LaBelle*. There, we held that the search of the backpack was valid because the officer had the authority to search the car (either based on the driver's consent or as a search incident to arrest) and "[a]uthority to search the entire passenger compartment of the vehicle includes any unlocked containers located therein, including the backpack in this case." *LaBelle*, 478 Mich at 892. We presumably intended the quoted language to apply only to searches incident to arrest. For one, that was, in fact, the legal standard for a search incident to arrest when we issued the *LaBelle* order. *New York v Belton*, 453 US 454, 460-461; 101 S Ct 2860; 69 L Ed 2d 768 (1981) ("[T]he police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach."), abrogated by *Arizona v Gant*, 556 US 332 (2009). And we could not have imposed a bright-line rule like that for consent searches even if we wished—the consenting party defines the scope of her consent. *Jimeno*, 500 US at 251; *Rodriguez*, 497 US at 183-189.

But our order was not a model of clarity. So it is understandable that the trial court applied this rule to the consent search here. In any event, our *LaBelle* holding is now a dead letter in both contexts: *Gant* supplanted *Belton* for searches incident to arrest. And if we intended to graft the *Belton* standard onto consent searches, we overrule it. We instead reaffirm that an officer must obtain consent from someone with the actual or apparent authority to give it, *Rodriguez*, 497 US at 188-189, that the scope of any consent search is defined by the consenting party, and that "[t]he standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness . . . ." *Jimeno*, 500 US at 251.

11

With these principles understood, we turn to the search here. An objectively reasonable police officer would not have believed that Taylor had actual or apparent authority over defendant's backpack. Officer Burkart testified that he believed the backpack belonged to the defendant. No evidence suggested that Taylor had mutual use of the backpack. A backpack is used to transport personal items, which suggests individual ownership rather than common ownership. See *Utah v Harding*, 282 P3d 31, 38; 2011 UT 78 (2011). Burkart knew at the time of the search that Taylor and the defendant were near strangers. Taylor told Burkart that she had met the defendant earlier that night and that she was dropping him off somewhere on her way, and the defendant independently confirmed that.

Given this brief relationship, a reasonable officer could not conclude that Taylor had mutual use of the defendant's backpack. Taylor was like a rideshare driver who has only short-term contact with passengers—an objectively reasonable officer would not believe (absent unusual circumstances) that an Uber driver could consent to the search of his passenger's purse, for example. And since Taylor didn't have the apparent authority to consent to the search of the backpack, the scope of her consent is irrelevant. By definition, the scope of a person's consent cannot exceed her apparent authority to give that consent. See *Rodriguez*, 497 US at 188 (cautioning that even when a third party explicitly consents to the search of a particular place, it is unreasonable to act on that consent if "the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry").

Because Taylor did not have apparent common authority over the backpack, the search of the backpack was not based on valid consent and is per se unreasonable unless

12

another exception to the warrant requirement applies.  Officer Burkart conceded that he did not have probable cause to search or reasonable suspicion that the defendant or Taylor was armed.  And we agree with the Court of Appeals that none of the other exceptions to the warrant requirement has been satisfied.  We therefore hold that the warrantless search of the defendant's backpack was unreasonable and violated his Fourth Amendment rights.

III.  CONCLUSION

For these reasons, we overrule *People v LaBelle*, 478 Mich 891 (2007), and hold that the search of the defendant's backpack violated the Fourth Amendment.  Therefore, we reverse the opinion of the Court of Appeals, vacate the trial court order denying the defendant's motion to suppress, and remand to the trial court for further proceedings not inconsistent with this opinion.  We do not retain jurisdiction.

> Bridget M. McCormack
> Stephen J. Markman
> Brian K. Zahra
> David F. Viviano
> Richard H. Bernstein
> Elizabeth T. Clement

CAVANAGH, J., did not participate in the disposition of this case because the Court considered it before she assumed office.

13