*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARK STANFORD KATZMAN,

Defendant-Appellant.

FOR PUBLICATION
October 3, 2019
9:00 a.m.

No. 345173
Oakland Circuit Court
LC No. 2017-263755-FH

Before: JANSEN, P.J., and CAMERON and TUKEL, JJ.

JANSEN, P.J.

Defendant, Mark Stanford Katzman, appeals as of right his June 7, 2018, bench trial convictions of two counts of delivery of less than 50 grams of cocaine, MCL 333.7401(2)(a)(*iv*). Defendant was sentenced on July 24, 2018, to three days' imprisonment and one year of probation for each conviction. We affirm.

## I. RELEVANT FACTUAL BACKGROUND

This case arises from an undercover drug trafficking investigation conducted by Farmington Hills Police Sergeant Eric Buckberry. Through a confidential informant, Sergeant Buckberry and other police officers were introduced to Jessica Engisch. On multiple occasions, the officers purchased fentanyl and cocaine from Engisch. During these transactions, Engisch told the officers that she could get drugs such as cocaine, marijuana, and heroin from defendant. Ultimately, the police officers executed a search warrant on Engisch's motel room. The officers found cocaine, and seized Engisch's cell phone pursuant to the search warrant. The following day Sergeant Buckberry responded to a text message from defendant, as if he were Engisch, telling defendant that he could come to Engisch's motel room. When defendant arrived at Engisch's motel room, the police officers questioned him about his possible participation in a drug trafficking incident. Defendant admitted that he was at the motel to pick up his money from a cocaine sale the night before, as well as from another sale a few weeks before. Defendant was arrested, transported to Oakland County Jail, and charged with two counts of delivery of less than 50 grams of cocaine.

Defendant filed a motion with the trial court to suppress his statements made to police admitting that he sold cocaine to Engisch. Defendant argued that the statements should be suppressed because they were illegally obtained in violation of the US Const, Ams, IV, V, and XIV and Const 1963, art 1, §§ 11, 17. Defendant contended that although the search warrant allowed the police officers to search Engisch's cell phone, it did not allow them to use it to send a "fraudulent message" to defendant. Defendant further asserted that he had a reasonable expectation of privacy in the text message exchange with Engisch, and the police trespassed on his personal effects by causing the text message to appear on his cell phone. The trial court denied defendant's motion to suppress, and this appeal followed.

## II. MOTION TO SUPPRESS STATEMENTS

Defendant's argument on appeal relates to the trial court's denial of his motion to suppress his statements to police admitting that he sold cocaine. Defendant argues that the trial court incorrectly denied his motion to suppress evidence because the search warrant only allowed the police officers to search the cell phone, not use it. We disagree. This Court reviews a trial court's ruling at a suppression hearing de novo. *People v Daoud*, 462 Mich 621, 629; 614 NW2d 152 (2000). This Court reviews the trial court's findings of fact for clear error. *Id.*

We consider the standing question first because it is presents the threshold issue of whether defendant can even assert a violation of the Fourth Amendment. We hold that defendant lacks standing to invoke protection from an unreasonable search or seizure as to Engisch's cell phone under US Const, Am IV and Const 1963, art 1, § 11, and that the trial court therefore did not err when it determined that law enforcement's search and use of Engisch's cell phone was proper. We also find hold that even if defendant had standing, his claimed Fourth Amendment violation nevertheless would fail.

### A. STANDING

The United States and Michigan Constitutions protect against unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. The Fourth Amendment of the United States Constitution provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." The corresponding provision of the Michigan Constitution provides, in part, "The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures." Const 1963, art 1, § 11. [*People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016).]

The United States and Michigan Constitutions are coextensive in this regard. *People v Slaughter*, 489 Mich 302, 311; 803 NW2d 171 (2011).

To invoke the Fourth Amendment's protections, a defendant bears the burden of establishing that he has standing[1] to do so. *Mahdi*, 317 Mich App at 459. An individual "may challenge an alleged Fourth Amendment violation if she can show under the totality of the circumstances that she had a legitimate expectation of privacy in the area searched and that her expectation of privacy was one that society is prepared to recognize as reasonable." *People v Mead*, 503 Mich 205, 213; 931 NW2d 557 (2019), citing *People v Smith*, 420 Mich 1, 28, 306 NW2d 841 (1984).[2] In this case, the only area searched was Engisch's cell phone, which was done through execution of a lawful search warrant. Defendant certainly had a legitimate expectation of privacy in the contents of his own cell phone, see *Rakas* 439 US at 144 n 12 ("[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of [the] right to exclude."). And courts have recognized that a cell phone is an "effect" for Fourth Amendment purposes. See *United States v Gardner*, 887 F3d 780, 784 (CA 6, 2018) (recognizing a cell phone as an "effect" protected by the Fourth Amendment); cf. *United States v Wurie*, 728 F3d 1, 14 (CA 1, 2013), aff'd sub nom *Riley v California*, 573 US 373; 134 S Ct 2473; 189 L Ed 2d 430 (2014) (noting that "[t]oday,

---

[1] The United States Supreme Court in *Rakas v Illinois*, 439 US 128, 140; 99 S Ct 421; 58 L Ed 2d 387 (1978), "dispens[ed] with the rubric of standing" in the Fourth Amendment context and stated that "the analysis belongs more properly under the heading of substantive Fourth Amendment doctrine than under the heading of standing." However, use of the term "standing" still persists in search and seizure contexts. *People v Mead*, 503 Mich 205, 213 n 2; 931 NW2d 557 (2019). Essentially, rather than framing it as a standing issue, the question can be expressed as whether the defendant has stated a substantive Fourth Amendment claim on which relief may be granted. *Id.*

[2] The "area searched" language, which derives directly from *Rakas*, 439 US at 148-149, is not a geographic descriptor, but rather delineates the circumstances under which a defendant may challenge a search. *Rakas* was describing a defendant's privacy expectation in a car's glovebox, which is appropriately referred to as "an area" of the car. But the "area searched" language is properly understood as "a determination of whether the disputed search and seizure has infringed an *interest* of the defendant which the Fourth Amendment was designed to protect." *Mead*, 503 Mich at 213 n 2 (emphasis added). The "interest" of a defendant does not turn on location; as the Supreme Court famously observed, " 'the Fourth Amendment protects people not places.' " *Katz v United States*, 389 US 347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1967). Indeed, in the same string citation in which it cited *Rakas*, the *Mead* Court also cited *Smith*, 420 Mich 1. See *Mead*, 503 Mich at 213. *Smith* held that "before a defendant may attack the propriety of a search or seizure, that search or seizure must have infringed upon an interest of the defendant which art 1, § 11 was designed to protect. In making this determination, the court must decide whether the defendant had an expectation of privacy in the object of the search and seizure and whether that expectation is one that society is prepared to recognize as reasonable." *Smith*, 420 Mich at 28; see also *Katz*, 389 US at 353 ("[O]nce it is recognized that the Fourth Amendment protects people—and not simply 'areas'—against unreasonable searches and seizures it becomes clear that the reach of that Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure.").

many Americans store their most personal 'papers' and 'effects,' US Const, Am IV, in electronic format on a cell phone, carried on the person").

In this case, defendant's cell phone never was searched, and no information was seized from it. "The right to be free from unreasonable searches and seizures is personal, and the right cannot be invoked by a third party." *Mahdi*, 317 Mich App at 458-459; see also *Rakas*, 439 US at 134 ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."). Factors relevant to the determination of standing, as noted, include ownership, possession, control of the area searched or item seized, as well as historical use of the item and ability to regulate access. *Mahdi*, 317 Mich App at 458-459. Defendant, as a third party to the search, seizure, and subsequent use of Engisch's cell phone, cannot demonstrate and has not demonstrated any ownership, possession, control, historical use, or ability to regulate Engisch's cell phone. Once defendant sent the initial text message to Engisch's cell phone, he no longer had an expectation of privacy in the text message exchange. See *Katz v United States*, 389 US 347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."). As noted, defendant bears the burden of establishing standing in order to invoke the Fourth Amendment's protections. *Mahdi*, 317 Mich App at 459. Defendant has not met his burden. Defendant referred to *Hinton*, where the Washington Supreme Court determined that a police officer's use of a third party's cell phone to ultimately arrest another individual violated the Washington Constitution. *State v Hinton*, 179 Wash 2d 862; 319 P3d 9 (2014). However, *Hinton* lends no support to the standing issue. A Washington Supreme Court decision is not binding on this Court, as it is at most persuasive authority. *Travelers Prop Cas Co of America v Peaker Serv, Inc*, 306 Mich App 178, 188; 855 NW2d 523 (2014). However, *Hinton* is not persuasive on this point because it is factually dissimilar in that the police officers in that case did not have a search warrant for the third party's cell phone. *Hinton*, 179 Wash 2d at 865. Moreover, *Hinton* was decided under the Washington Constitution, which the court noted "is qualitatively different from the Fourth Amendment and provides greater protections." *Id*. at 868. By contrast, as already discussed, the Fourth Amendment and Article 1, § 11 of the 1963 Michigan Constitution are coextensive. *Slaughter*, 489 Mich at 311.[3]

---

[3] Defendant also cites to *People v Dziura*, unpublished per curiam opinion of the Court of Appeals, issued December, 15, 2015 (Docket No. 323003), to argue that consent is a prerequisite to an officer using an individual's cell phone. *Id*. at 4. Of course, *Dziura*, as an unpublished opinion, is not binding on us. MCR 7.215(C)(1). Moreover, *Dziura* turned on a consent analysis, as consent is an exception to the warrant requirement, and there was no search warrant in that case. Therefore, given the facts, the search in *Dziura* was valid only if consent was properly obtained. Here, consent is irrelevant because the police officers had a valid search warrant for Engisch's cell phone. Furthermore, unlike the police officers in *Dziura*, the police officers here did not use defendant's cell phone at all.

Therefore, defendant has failed to show that he had a legitimate expectation of privacy in the area searched. As a result, defendant lacks standing to invoke the Fourth Amendment's protections, and his argument fails.

## B. TRESPASS

Even if we were to find that defendant had standing to challenge the search, we nevertheless would reject his argument. Defendant argues that Sergeant Buckberry trespassed on his property by causing a text message to appear on his cell phone.

Defendant relies on the "trespass test" set out in *United States v Jones*, 565 US 400; 132 S Ct 945; 181 L Ed 2d 911 (2012), to argue that the text message he received from law enforcement constituted a "digital trespass," resulting in a violation of his Fourth Amendment rights. In *Jones*, police officers attached a GPS tracking device to the defendant's vehicle and used the device to monitor the vehicle's movements. *Id.* at 402-403. The Supreme Court determined that the government's physical intrusion on the defendant's "effect" constituted a "search" within the meaning of the Fourth Amendment. *Id*. at 404-405. The Court's reasoning in *Jones* was based on the fact that the government "physically occupied private property for the purpose of obtaining information" without a search warrant. *Id*. The same reasoning does not apply here because a device was not physically attached to defendant's cell phone in order to track defendant's movement or private conversations. Rather, the text message that defendant received from law enforcement amounted to an electronic communication that did not occupy an actual physical presence on defendant's personal property. Because the text message that defendant received from law enforcement did not constitute a physical trespass on his effect, defendant's reliance on *Jones* is misplaced. The proper inquiry is whether defendant had a reasonable expectation of privacy. See *id*., 411 ("Situations involving merely the transmission of electronic signals without trespass . . . [are] subject to" the reasonable expectation of privacy test.).

Affirmed.

/s/ Kathleen Jansen
/s/ Thomas C. Cameron
/s/ Jonathan Tukel