*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

AZUCENA AJUNGO,

      Defendant-Appellant.

UNPUBLISHED
May 11, 2023

No.  363243
Allegan Circuit Court
LC No.  2022-025198-FH

Before:  MARKEY, P.J., and MURRAY and FEENEY, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order denying defendant's motion to suppress evidence.  We vacate the trial court's order and remand for further proceedings.

## I.  FACTUAL BACKGROUND

In January 2022, defendant assaulted the victim, her daughter, at their shared home.  When the physical altercation concluded, the victim left the house and contacted her father, who took the victim to the hospital later that evening.  Allegan County Sheriff's Office Deputy Dillon Schmitt was dispatched to investigate the incident.  After arriving at the hospital, Deputy Schmitt called Allegan County Sheriff's Office Sergeant Kyle Baker and requested assistance from Sergeant Baker and Deputy James Anderson with investigating a potential child abuse complaint.  Deputy Schmitt asked that they visit defendant and "interview the defendant on the situation because it was starting to get really late [at] night."

Sergeant Baker and Deputy Anderson visited defendant "to get her side of the story and see if it was a safe place for the child to go back to."  Deputy Anderson testified that they visited defendant, in part, "to find out what happened" and "to establish if it was a safe residence or not." Sergeant Baker confirmed that they went to visit defendant with "[t]he intent . . . to make sure that

---

[1] *People v Ajungo*, unpublished order of the Court of Appeals, entered December 21, 2022 (Docket No. 363243).

the mother knew that the child was in the hospital, [and] to see if there was any other issues at the house." According to Sergeant Baker, "[b]ased on the fact it involved a child who apparently received injuries there was concern for safety of the child if the child had to go back to that residence . . . ." Sergeant Baker was also concerned that there may have been other children in the house.

At approximately 1:00 a.m., Deputy Anderson attempted contact with defendant at defendant's house by ringing the doorbell and then knocking on the door for a few minutes. After defendant opened the door, Deputy Anderson introduced himself and explained that they "needed to talk about her daughter; that there was an incident earlier in the night and . . . that her daughter . . . was at the hospital and [he] needed to find out what happened." Deputy Anderson believed that defendant was asked "what happened to see if [they] could see—look around, make sure it was safe" and "if [they] could come in and talk." According to Deputy Anderson, defendant did not object to either officer entering defendant's house.

After entering defendant's house, Deputy Anderson explained to defendant why they visited and asked defendant what happened with the victim; defendant then recounted the physical altercation. As defendant and Deputy Anderson talked, defendant showed Deputy Anderson where the physical altercation occurred and allowed Deputy Anderson to take photographs.

Defendant was subsequently charged with two counts of assault with a dangerous weapon, MCL 750.82; third-degree child abuse, MCL 750.136b(5); and domestic violence, MCL 750.81(2). Prior to trial, the trial court heard defendant's motion to suppress, which sought to exclude evidence that was obtained during the officers' visit, particularly defendant's statements and the officers' photographs. The trial court denied the motion, concluding that although officers were trespassing given the time of day, they conducted the "knock and talk" procedure, the search was not unlawful under the Fourth Amendment because the officers approached defendant's house with the intent to investigate a crime, as well as to perform community-caretaking duties, such as informing defendant about the victim's whereabouts and verify the safety of defendant's house. The trial court also explained that defendant's voluntary consent to the officers' search allowed evidence, including the officers' photographs, to become admissible.

## II. MOTION TO SUPPRESS

### A. PRESERVATION OF ISSUE

An issue is preserved for appellate review if it was raised, addressed, and decided by the trial court. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Defendant preserved this issue for appeal because the trial court denied her motion to suppress.

### B. STANDARD OF REVIEW

"We review de novo a trial court's ultimate decision on a motion to suppress on the basis of an alleged constitutional violation." *People v Gingrich*, 307 Mich App 656, 661; 862 NW2d 432 (2014). We review de novo questions of law, including whether the Fourth Amendment was violated and whether the exclusionary rule was applicable. *People v Keller*, 479 Mich 467, 473-474; 739 NW2d 505 (2007); *People v Corr*, 287 Mich App 499, 506; 788 NW2d 860 (2010). We review for clear error any findings of fact made by the trial court at a suppression hearing. *People*

*v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Swirles (After Remand)*, 218 Mich App 133, 136; 553 NW2d 357 (1996).

## C. ANALYSIS

Defendant argues that the trial court erred by denying defendant's motion to suppress evidence because the officers' knock and talk, in the early morning hours with the purpose of obtaining information, was a search under the Fourth Amendment with no applicable exception to the warrant requirement.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." US Const, Am IV. "The Fourth Amendment of the United States Constitution—like Article 1, § 11 of the 1963 Michigan Constitution, whose protections have been construed as coextensive with its federal counterpart—protects against unreasonable searches and seizures." *People v Mead*, 503 Mich 205, 212; 931 NW2d 557 (2019) (citation omitted). Although a search warrant is not always required before the police search or seize a person's personal effects, there exists a strong preference in favor of obtaining a warrant for the purposes of conducting a search, so the general rule is that the police must secure a warrant in order for a search or seizure to be reasonable under the Fourth Amendment. *People v Hughes*, 506 Mich 512, 524-525; 958 NW2d 98 (2020) (citations omitted). A search occurs under the Fourth Amendment when the police trespass on protected property to attempt or accomplish information-gathering. *People v Frederick*, 500 Mich 228, 234, 236-237; 895 NW2d 541 (2017). Any evidence obtained as a result of a constitutionally unreasonable search is subject to exclusion unless the police possessed a warrant or the search fell under an exception to the warrant requirement. *People v Eaton*, 241 Mich App 459, 461; 617 NW2d 363 (2000).

A knock-and-talk procedure typically involves the police who, possessing knowledge that they believe justifies further investigation but "is insufficient to constitute probable cause for a search warrant, approach the person suspected of engaging in illegal activity at the person's residence (even knock on the front door), identify themselves as police officers, and request consent to search for the suspected illegality or illicit items." *People v Frohriep*, 247 Mich App 692, 697; 637 NW2d 562 (2001). When the police approach a home and perform a proper knock and talk, there is no search as defined by the Fourth Amendment. *Frederick*, 500 Mich at 234. With respect to determining the proper scope of a knock and talk, it is necessary to consider the "implied license" that is granted in general to all kinds of peddlers, solicitors, and hawkers. *Id*. A police officer may approach a home and knock without a warrant precisely because that is no more than any private citizen would be entitled to do. *Id*. at 234-235 (citation omitted). However, when a police officer strays beyond what any private citizen might do, he or she has strayed beyond the bounds of a permissible knock and talk, or, in other words, has trespassed. *Id*. at 239. "There is generally no implied license to knock at someone's door in the middle of the night," so a police officer trespasses when he or she approaches protected property in the middle of the night. *Id*. at 238-239. A trespass then turns into a search under the Fourth Amendment when conjoined with the purpose of gathering information. *Id*. at 241.

It appears undisputed that the officers presented at defendant's house at about 1:00 a.m. with an intent to (1) gather information about a potential child abuse complaint against defendant, (2) inform defendant that her daughter was in the hospital, and (3) ensure the home was safe if the victim had to return that day. Although *Frederick* does not address an officer's possessing an unrelated intent in addition to an intent to gather information, *Frederick* strongly suggests that a predominate intent to gather information turns a trespass into a search as defined by the Fourth Amendment. *Id*. (explaining that information-gathering "is all that is required to turn the trespass into a Fourth Amendment search"). The fact that a police officer possesses an additional intent beyond an intent to gather information does not prevent a trespass from becoming a search under the Fourth Amendment. See *id*. Accordingly, the officers were trespassing when they engaged in the knock and talk, making it a search under the Fourth Amendment. See *id*. at 242.

The fact that officers were trespassing while at least in part seeking to gather information does not end the inquiry. As the *Fredericks* Court recognized, "during the invalid knock and talks, each defendant consented to a search of his respective home. Consent searches, when voluntary, are an exception to the warrant requirement." *Id*.[2] But that consent must be considered in light of the illegal search—the unlawfully undertaken knock and talk. *Id*. Thus, a court must undertake an analysis of whether a defendant's voluntary consent to a search was sufficiently attenuated from the unlawful knock and talk, and if it were, the evidence should not be suppressed:

> Rather, the defendants' consent—even if voluntary—is invalid unless it is sufficiently attenuated from the warrantless search. The Supreme Court has repeatedly held that evidence obtained through an illegal search or seizure is tainted by that initial illegality unless sufficiently attenuated from it. See *Wong Sun v United States*, 371 US 471, 486; 83 S Ct 407; 9 L Ed 2d 441 (1963) (holding that evidence acquired after an illegal search must be suppressed unless the government shows that its acquisition of the evidence resulted from 'an intervening independent act of free will' sufficient "to purge the primary taint of the unlawful invasion'). That analysis has been applied to both consensual statements and—particularly relevant here—consensual searches. *Brown v Illinois*, 422 US 590, 602; 95 S Ct 2254; 45 L Ed 2d 416 (1975) (holding that when an inculpatory statement follows an unlawful arrest, a finding of voluntariness does not obviate the need to make a separate Fourth Amendment determination as to whether the statement was ' "sufficiently an act of free will to purge the primary taint" '), quoting *Wong Sun*, 371 US at 486; *Florida v Royer*, 460 US 491, 507-508; 103 S Ct 1319; 75 L Ed 2d 229 (1983) ('Because we affirm the . . . conclusion that *Royer* was being illegally detained when he consented to the search of his luggage, we agree that the consent was tainted by the illegality and was ineffective to justify the search.').

> Thus, even when consent is voluntary, if it is not attenuated from the unconstitutional search, the evidence must be suppressed. *Wong Sun*, 371 US at

---

[2] The consent exception to the warrant requirement allows for a warrantless search and seizure when consent, absent any actual or implied duress or coercion, is unequivocal, specific, voluntary, and intelligently given. *People v Farrow*, 461 Mich 202, 206; 600 NW2d 634 (1999).

486; *Brown*, 422 US at 602; *Royer*, 460 US at 507-508. The Supreme Court has identified three factors to be considered in determining whether consent is sufficiently attenuated: (1) the temporal proximity of the illegal act and the alleged consent, (2) the presence of intervening circumstances, and (3) the purpose and flagrancy of the official misconduct. *Brown*, 422 US at 603-604. [*Id*., at 242-243.].

As did the *Frederick* Court, we deem the best approach to remand this matter to the trial court to engage in the three-factor analysis to determine whether defendant's voluntary consent to the officers' entry into the house and subsequent search was sufficiently attenuated from the unlawful knock and talk to allow admission of the evidence.[3]

### III. CONCLUSION

We vacate the trial court's order and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Christopher M. Murray
/s/ Kathleen A. Feeney

---

[3] The prosecution argues that the Fourth Amendment was not violated because the "exigent circumstances" exception to the warrant requirement applied. But to justify entry into a residence, the police must have an objectively reasonable basis for believing that someone in the residence needs immediate aid, *Michigan v Fisher*, 558 US 45, 47; 130 S Ct 546; 175 L Ed 2d 410 (2009) (citation omitted), and there was no finding by the trial court to justify the application of this exception. Additionally, the community caretaking exception does not apply to entry into a home. *Caniglia v Strom*, __ US __, __; 141 S Ct 1596; 209 L Ed 2d 604 (2021) ("The question today is whether [the Court's prior recognition of law enforcement's] 'caretaking' duties creates a standalone doctrine that justifies warrantless searches and seizures in the home. It does not.").