*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

UNIQUE BERNICE WEBSTER,

        Defendant-Appellant.

UNPUBLISHED
November 19, 2024
1:31 PM

No. 365834
Wayne Circuit Court
LC No. 22-006618-01-FH

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

In this interlocutory appeal, defendant Unique Bernice Webster, appeals as on leave granted[1] the trial court's order denying her motion to suppress evidence recovered during a search of a vehicle in which Webster was a passenger. Webster was charged, as a third-offense habitual offender, MCL 769.11, with possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, carrying a concealed weapon (CCW), MCL 750.227, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a traffic stop on September 29, 2022, of a vehicle in which Webster was a passenger. At the preliminary examination, Detroit Police Department Officer Dillon Hanson testified that the officers initiated the traffic stop after searching the Law Enforcement Information Network (LEIN) and determining that the subject vehicle was uninsured. The officers thereafter determined that the driver, Reno Taylor, did not have a valid driver's license and removed Taylor from the vehicle. The officers also asked Webster to step out of the vehicle and she complied, leaving her purse in the passenger seat. Soon after, she asked the officers if she

---

[1] This Court initially denied Webster's application for leave to appeal. *People v Webster*, unpublished order of the Court of Appeals, entered June 7, 2023 (Docket No. 365834). Our Supreme Court subsequently remanded the case to this Court for consideration as on leave granted. *People v Webster*, ___ Mich ___; 3 NW3d 791 (2024) (Docket No. 165950).

could retrieve her purse to get her identification for them. They stated they would get her purse back to her shortly. Officer Hanson thereafter searched the vehicle. During the course of the search, Officer Hanson searched Webster's purse. Officer Hanson moved some of the items in the purse and saw the handle of a semiautomatic handgun inside the purse. Webster was thereafter arrested and charged as mentioned above.

Webster filed a motion to suppress the evidence recovered during the inventory search on the basis that the seizure and search of her purse violated her Fourth Amendment rights. After hearing oral argument, the trial court found that Webster did not have a reasonable expectation of privacy in her purse and, thus, lacked standing to challenge the search. The trial court also found that the search and seizure were constitutionally permissible. The trial court denied Webster's motion to suppress evidence. Webster now appeals.

## II. ANALYSIS

Webster argues that the trial court clearly erred by finding that she did not have a legitimate expectation of privacy in her purse. We agree.

## A. STANDARD OF REVIEW

We review a trial court's decision on a motion to suppress de novo. *People v Moorman*, 331 Mich App 481, 484; 952 NW2d 597 (2020). We review a trial court's factual findings concerning a motion to suppress for clear error, "and the underlying constitutional issues, including whether a Fourth Amendment violation occurred, are reviewed de novo." *Id*. at 485 (quotation marks and citation omitted). "A factual finding is clearly erroneous if it leaves the Court with a definite and firm conviction that the trial court made a mistake." *Id*. (quotation marks and citation omitted).

## B. CONSTITUTIONAL PROTECTION AGAINST UNREASONABLE SEARCHES AND SEIZURES

### 1. WEBSTER'S LEGITIMATE EXPECTATION OF PRIVACY

"Both the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Pagano*, 507 Mich 26, 31-32; 967 NW2d 590 (2021), citing US Const, Am IV; Const 1963, art 1, § 11. "A search occurs under the Fourth Amendment when the government violates a subjective expectation of privacy that society recognizes as reasonable." *People v Serges*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 355554); slip op at 6 (quotation marks and citation omitted). In *People v Mead*, 503 Mich 205, 214; 931 NW2d 557 (2019), our Supreme Court held

> a person—whether she is a passenger in a vehicle, or a pedestrian, or a homeowner, or a hotel guest—may challenge an alleged Fourth Amendment violation if she can show under the totality of the circumstances that she had a legitimate expectation of privacy in the area searched and that her expectation of privacy was one that society is prepared to recognize as reasonable. [*Id*.]

Thus, to challenge a search of a vehicle or a container therein on Fourth Amendment grounds, a passenger must first demonstrate that he or she had a legitimate expectation of privacy in the item searched, and the expectation of privacy must be one that society recognizes as reasonable. *Id*. at 212-213. To determine whether a person had a legitimate expectation of privacy in the item searched, courts must consider the totality of the circumstances surrounding the search. *Id*. at 213.

In *Mead*, the defendant, Larry Mead, was a passenger in a vehicle stopped by police. When officers approached the vehicle, Mead was in the passenger seat, clutching a backpack on his lap. The driver indicated that she had just met Mead and agreed to drop Mead off somewhere because they were traveling in the same direction. The driver consented to a search of her vehicle. An officer asked Mead to exit the vehicle, and Mead left his backpack on the passenger floor before exiting. The officer opened Mead's backpack and found drugs and paraphernalia inside of it. Mead was arrested for possession of methamphetamine. *Id*. at 209-210.

Our Supreme Court held that Mead "asserted a clear possessory interest in his backpack by clutching it in his lap," and the officer believed the backpack belonged to Mead because of the way he was holding the backpack. *Id*. at 214. Because a person who owns or lawfully possesses or controls property will generally have a legitimate expectation of privacy "by virtue of [the] right to exclude," Mead had a legitimate expectation of privacy in his backpack. *Id*., citing *Rakas v Illinois*, 439 US 128, 144 n 12; 99 S Ct 421; 58 L Ed 2d 387 (1978) (alteration in original).

In the instant case, the trial court found that Webster indicated to officers that her ID was in her purse and her purse was left on or near the passenger seat. This was supported by the bodycam footage in evidence, which depicts Webster telling an officer that she had identification on her, either in her pocket or her purse, and depicts the purse resting on the passenger seat vacated by Webster after she was removed from the vehicle. Notwithstanding these findings, the trial court concluded that Webster did not have a legitimate expectation of privacy in her purse. The trial court reasoned there was no evidence that Webster asserted a clear possessory interest over her purse by clutching it in her lap, in the same way that Mead clutched his backpack, and further, that the purse was left open, not zipped shut or otherwise closed.

The trial court clearly erred by finding that Webster did not have a legitimate expectation of privacy in her purse that society was willing to recognize as reasonable. It is true that no evidence was presented demonstrating that Webster clutched her purse in her lap. It is also true that the *Mead* Court cited the fact that Mead was clutching his backpack in support of its holding that Mead asserted a clear possessory interest in the backpack, and, therefore, had a legitimate expectation of privacy in the backpack. *Mead*, 503 Mich at 214. But *Mead* does not go so far to set forth a requirement that a defendant must clutch an item of property in his or her lap to assert a clear possessory interest over that item. Rather, the *Mead* Court held that, because "[o]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of [the] right to exclude," and Mead asserted a clear possessory interest over his backpack, Mead had a legitimate expectation of privacy in his backpack that society is willing to recognize as reasonable. *Id*. at 214-215 (citation omitted; second alteration in original).

Here, although Webster was not clutching her purse in her lap, she asserted a clear possessory interest over her purse. As the trial court correctly found, Webster identified a purse in the vehicle as belonging to her before she was removed from the vehicle, and the purse Officer

Hanson searched was located on the passenger seat vacated by Webster. The bodycam footage does not depict any other purses located within the vehicle. Moreover, Officer Hanson testified that Webster was not allowed to take her purse with her when she was removed from the vehicle. Considering that Webster identified a purse in the vehicle as hers, she was not allowed to take her purse with her when she was removed from the vehicle, the purse was located on the seat she had just vacated, and there were no other purses in the vehicle, the trial court erred by finding that Webster did not assert a clear possessory interest in the purse.

Further, the trial court clearly erred in finding that whether the purse was open, i.e., not zipped shut or otherwise closed, supports the conclusion that Webster had no legitimate expectation of privacy. Although the backpack in *Mead* was zipped shut or closed when it was left in the vehicle, however, the *Mead* Court never references this fact in its analysis, nor was there any indication that the *Mead* Court considered this fact in determining that Mead had a legitimate expectation of privacy that society is willing to recognize as reasonable. Moreover, although Webster's purse here was not zipped shut or sealed in another manner, the bodycam footage shows that the purse was left on the passenger seat, leaning toward the center console in a manner which effectively precluded its contents from being seen. Officer Hanson testified that the purse was "[n]ot open for plain view," and he found the gun after opening the purse and manipulating items therein. Thus, Webster's purse is akin to the backpack in *Mead*: it was left inside the vehicle in such a manner that law enforcement had to manipulate it to see its contents. To the extent that this fact was relevant to the *Mead* Court's holding that Mead "had a legitimate expectation of privacy in his backpack that society is willing to recognize as reasonable," *id*. at 215, the trial court clearly erred by finding that Webster did not have a legitimate expectation of privacy that society recognizes as reasonable because her purse was not zipped shut or otherwise closed.

Because Webster asserted a clear possessory interest in her purse, she had a legitimate expectation of privacy in the purse. Further, because the purse is analogous to the backpack in *Mead*, Webster's legitimate expectation of privacy is one that society is willing to recognize as reasonable. The trial court, therefore, clearly erred by finding that Webster did not have a legitimate expectation of privacy in her purse that society is willing to recognize as reasonable and lacked standing to challenge the search on Fourth Amendment grounds.

## 2. VALIDITY OF INVENTORY SEARCH

Webster next argues that the trial court erred by finding that the search was a valid inventory search. We agree.

"There has been clear acceptance and recognition of the inventory search of personal possessions as an exception to the Fourth Amendment warrant requirement as part of the caretaking function local police officers are required to perform." *People v Toohey*, 438 Mich 265, 283-284; 475 NW2d 16 (1991). Under this exception, law enforcement may conduct an inventory search of a vehicle that is being impounded. *Id*. at 271-272. This is because an inventory search is "considered to be an administrative function performed by the police, rather than part of a criminal investigation which the Fourth Amendment was intended to circumscribe." *Id*. at 271-272. However, "[t]o be constitutional, an inventory search *must* be conducted in accordance with established departmental procedures, which all police officers are required to follow, and *must not* be used as a pretext for criminal investigation." *Id*. at 284. The prosecution bears the burden of

establishing "that an inventory-search policy existed, all police officers were required to follow the policy, the officers actually complied with the policy, and the search was not conducted in bad faith." *People v Swenor*, 336 Mich App 550, 568; 971 NW2d 33 (2021).

The trial court clearly erred by finding that Webster's purse was searched as part of a valid inventory search in conformance with policies set forth by the Detroit Police Department. Though Officer Hanson testified that he searched Webster's purse as part of an inventory search of Taylor's vehicle, he did not testify that the search was conducted pursuant to departmental policy. And the prosecution did not present any evidence concerning a departmental policy for inventory searches. There was no evidence from which the trial court could conclude that the search was "conducted in accordance with established departmental procedures, which all police officers are required to follow . . . ." *Toohey*, 438 Mich at 284. Moreover, there was no evidence from which the trial court could conclude that "the officers actually complied with the policy." *Swenor*, 336 Mich at 568. The prosecution did not meet its burden of establishing the existence and substance of a departmental inventory search policy, and that the officers complied with that policy. Even if it had, it is not clear following *Mead* that Webster's purse could be lawfully searched as part of an inventory search. *Mead*, 503 Mich at 214, citing *United States v Welch*, 4 F3d 761, 764 (CA 9, 1993) ("The shared control of 'host' property does not serve to forfeit the expectation of privacy in containers within that property."). The trial court, therefore, clearly erred by finding that the search was a valid inventory search.

## III.  CONCLUSION

Because the prosecution failed to establish that the warrantless seizure and search of Webster's purse was constitutionally permissible, the trial court erred by denying Webster's motion to suppress evidence.

Reversed and remanded for entry of an order consistent with this opinion. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Noah P. Hood
/s/ Adrienne N. Young

-5-