## PEOPLE v LEVINE

Docket No. 113000. Decided September 28, 1999. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, vacated the judgment of the Court of Appeals and affirmed the judgment of the circuit court.

Brian E. Levine was convicted in the Oakland Circuit Court, Bryan H. Levy, visiting drug judge, of possession with intent to deliver marijuana. Before trial, the defendant had moved to suppress evidence of the marijuana seized by police following a search of the trunk of his vehicle. During an evidentiary hearing, the court, Dennis C. Drury, visiting drug judge, ordered the prosecution to obtain an affidavit from an undercover police officer who had supplied investigating officers with information from an informant, explaining why he needed to remain anonymous and the basis for his belief that his source of information was reliable. After the affidavit was provided, the court denied the defendant's motion to produce the undercover officer for cross-examination, as well as his motion to suppress the evidence. Following conviction, the court, Steven N. Andrews, J., denied the defendant's motion for a new trial. The Court of Appeals, McDonald, P.J., and Sawyer and Hoekstra, JJ., held that the circuit court violated the defendant's right to confrontation by precluding him from cross-examining the undercover police officer regarding the existence of his confidential source and issues relating to the source's past reliability and that the error was not harmless. 231 Mich App 213 (1998) (Docket No. 200181). The people seek leave to appeal.

In an opinion per curiam, signed by Chief Justice Weaver, and Justices Brickley, Taylor, Corrigan, and Young, the Supreme Court held:

The Court of Appeals erred in remanding the case for a supplemental hearing because there was probable cause to support the search of the defendant's vehicle.

An anonymous tip may support probable cause if the information is sufficiently corroborated by independent sources. The Court of Appeals erred in focusing on the source of the tip that prompted further investigation by the police and on the fact that the trial court requested an affidavit from the undercover officer. This was

not an instance where police, acting only on a tip, obtained a warrant or conducted a search without a warrant. Under the circumstances of this case, the question is whether the tip, as corroborated and supplemented by the officer's further investigation, provided sufficient probable cause.

Justices CAVANAGH and KELLY concurred in the result only.

Vacated.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, *David G. Gorcyca,* Prosecuting Attorney, *Daniel L. Lemisch,* Chief, Appellate Division, and *Thomas R. Grden,* Assistant Prosecuting Attorney, for the people.

*Miro, Weiner & Kramer, P.C.* (by *Matthew F. Leitman*), for the defendant-appellee.

PER CURIAM. The defendant was convicted in a bench trial of possession with intent to deliver marijuana. MCL 333.7401(2)(d)(iii); MSA 14.15(7401)(2)(d)(iii). The trial court sentenced him to two years probation. On appeal, the Court of Appeals ordered a supplemental evidentiary hearing on the defendant's motion to suppress evidence seized during the search of his car. We hold that a supplemental hearing is unnecessary. We thus vacate the opinion of the Court of Appeals and affirm the judgment of the circuit court.

I

This case arises from the search of the defendant's vehicle at about midnight on November 15, 1995, during which police seized marijuana and related paraphernalia from a black bag discovered in the trunk, and $320 from a door pocket. After speaking by telephone with an undercover police officer earlier that

evening, Officer Shelly Turner began a surveillance of a residence on Clubhouse Lane in Farmington Hills. The undercover officer had advised her that several persons and a large quantity of marijuana would be present at the site that night. She was aware that the officer had received this tip from someone else, but she did not know the identity of the informant.

Before beginning the surveillance, Officer Turner verified through official records the names and addresses of those who the undercover officer related would be present at the Clubhouse Lane residence. The undercover officer had identified the defendant as one of two people who would leave the residence with a quantity of marijuana for later distribution. The officer did not describe the defendant, nor detail how or precisely when he would arrive at the site. Officer Turner, however, was acquainted with the defendant's name from previous tips during her four years with the department's surveillance and narcotics team.

Officer Turner arrived at the residence approximately forty-five minutes after speaking with the undercover officer. She observed seven cars in the driveway. Later, she watched as three of the vehicles departed and three other vehicles arrived during a fifteen or twenty minute period. After observing the cars leave at 10:30 or 11:00 P.M., Officer Turner met briefly with Michael Farley, a uniformed officer from Farmington Hills. She enlisted his assistance in the event that she determined to stop one of the vehicles.

After resuming her surveillance, Officer Turner observed a man wearing dark clothing emerge from the Clubhouse Lane residence, carrying a black bag by its strap. He put the black bag in the trunk of a car parked at the end of the driveway, and drove the car

away. Officer Turner alerted Officer Farley and other uniformed officers by radio, and followed the vehicle northbound on Clubhouse Lane, toward Fourteen Mile Road.

Officer Turner testified that the car did not come to a complete stop before turning onto westbound Fourteen Mile. The driver then drove into a service station, but did not make a complete stop there, either, before driving back onto Fourteen Mile. Officer Turner requested that Officer Farley stop the defendant's vehicle, and, without jeopardizing the investigation, attempt to see the contents of the trunk. By this time, Officer Turner had confirmed that the vehicle was registered to someone who either resided at the defendant's address or had the same last name as the defendant.

Officer Farley effectuated the stop, and initially advised the defendant that he was looking for stolen telephones. The defendant denied that any such items or other contraband was in the trunk of his vehicle. He told Officer Farley that he had been at the home of a good friend with the surname "Hos." Officer Farley was aware that police had verified the name of the residents on Clubhouse Lane to be "Hoskins."

Officer Farley returned to his vehicle and asked Officer Turner to come to the scene. She arrived a short time later, about twenty-five minutes after defendant's vehicle was stopped. The police then searched the trunk of the defendant's vehicle and seized marijuana and related paraphernalia from a black bag. Officer Farley testified that the scent of fresh marijuana was evident once the trunk was opened.

II

Following testimony by Officer Turner and Officer Farley at the evidentiary hearing, the circuit court ordered the prosecution to obtain an affidavit from the undercover police officer who had spoken by telephone with Officer Turner. The court directed that the undercover officer use his real name in the affidavit, and explain his need for anonymity and the basis for his belief that his source of information was reliable.

The undercover officer submitted the affidavit. The officer stated that for the last three years of his eight and a half-year career, he had been working with the Drug Enforcement Administration of the United States Department of Justice, and had participated in at least one hundred drug investigations, utilizing numerous confidential informants and sources of information. The officer explained that, within seventy-two hours of the defendant's arrest, a confidential source had voluntarily told him about the drug-trafficking activities of the defendant and his associates. The source had named three persons, including the defendant, who would be at the house on Clubhouse Lane. The officer indicated that he had verified the addresses and ages provided. He also stated that the reliability of the information was bolstered by the fact that the officer had previous information that the persons with whom his source claimed to have had drug dealings were in fact involved in drug trafficking. Finally, the officer explained that he wanted to remain anonymous because the investigation was open and disclosure of his identity would jeopardize the operation and the identity of his confidential source.

The trial court denied the defendant's motion to produce the undercover officer for cross-examination, as well as his motion to suppress the evidence.[1]

III

On appeal by the defendant, the Court of Appeals concluded that the trial court violated the defendant's right to confrontation[2] by precluding him from cross-examining the undercover police officer regarding the existence of his confidential source and issues relating to the source's past reliability. 231 Mich App 213; 585 NW2d 770 (1998).

The Court determined that the error was not harmless because the trial court's finding of probable cause was in large part dependent on its finding that the confidential source was reliable. Emphasizing discrepancies between Officer Turner's observations and the details of the tip, the Court determined that Officer Turner's observations alone could not have supported a finding of probable cause.

IV

We agree with the prosecutor that the Court of Appeals erred in the instant case by focusing on the source of the tip that prompted Officer Turner's investigation and on the fact that the trial court requested an affidavit from the undercover officer. This was not an instance where police, acting only on a tip, obtained a warrant or conducted a search without a warrant. Under the circumstances of this case, the

---

[1] The trial court also denied the defendant's motion for a new trial.

[2] US Const, Am VI, and Const 1963, art 1, § 20.

question is whether the tip *as corroborated and supplemented by Officer Turner's further investigation* provided sufficient probable cause.[3]

A

The Michigan Constitution protects against unreasonable searches and seizures, and further provides that no warrant shall issue without probable cause, supported by oath and affirmation.[4] Const 1963, art 1, § 11. The Michigan provision is worded similarly to the Fourth Amendment of the United States Constitution.[5] This Court has held that, absent compelling reasons, art 1, § 11 provides the same protection as the Fourth Amendment. *Sitz v Dep't of State Police*, 443 Mich 744, 758-759; 506 NW2d 209 (1993), *People v Faucett*, 442 Mich 153, 158; 499 NW2d 764 (1993),[6] and *People v Smith*, 420 Mich 1, 20; 360 NW2d 841 (1984).

"The Fourth Amendment generally requires police to secure a warrant before conducting a search." *Maryland v Dyson*, 527 US 465, 466; 119 S Ct 2013; 144 L Ed 2d 442 (1999). See also *People v Davis*, 442

[3] We note, however, the Court's observation in *United States v Brundidge*, 170 F3d 1350, 1353 (CA 11, 1999), that independent corroboration of a tip is not per se a requirement in every case.

[4] With regard to the requirements for a search warrant, see also MCL 780.651(1), 780.653; MSA 28.1259(1)(1), 28.1259(3).

[5] Const 1963, art 1, § 11, contains the following additional language: "The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state."

[6] Although *Faucett* involved an investigative stop under *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), rather than a determination of probable cause, the analysis concerning the scope of Const 1963, art 1, § 11 and US Const, Am IV is applicable.

Mich 1, 10; 497 NW2d 910 (1993). An exception to the warrant requirement exists for searches of automobiles. *United States v Ross*, 456 US 798; 102 S Ct 2157; 72 L Ed 2d 572 (1982); *Carroll v United States*, 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925); *Faucett, supra* at 171, n 21. The exception applies only to searches supported by probable cause. *Ross, supra* at 809. "In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *Id.*

B

The United States Supreme Court has addressed on several occasions the question whether probable cause exists exclusively or primarily on the basis of a tip. In the 1960s, the Court developed a two-pronged test that required a determination that (1) the informant was credible or the report was reliable, and (2) there was a basis for the informant's knowledge, i.e., the particular means by which he came by the information. *Aguilar v Texas*, 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), as explained and refined in *Spinelli v United States*, 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969).

In the early 1980s, the Supreme Court abandoned the *Aguilar-Spinelli* test in favor of a "totality of the circumstances" analysis. *Illinois v Gates*, 462 US 213, 232, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983). Stating that probable cause is a fluid concept that is not readily or usefully reduced to a neat set of legal rules, the Court explained that it actually was returning to the analysis that had traditionally informed probable-cause determinations. The Court emphasized that it

was not discarding the *Aguilar-Spinelli* factors, though:

> We agree . . . that an informant's "veracity," "reliability," and "basis of knowledge" are all highly relevant in determining the value of his report. We do not agree, however, that these elements should be understood as entirely separate and independent requirements to be rigidly exacted in every case . . . . Rather, as detailed below, they should be understood simply as closely intertwined issues that may usefully illuminate the common-sense, practical question whether there is "probable cause" to believe that contraband or evidence is located in a particular place. [462 US 230.]

With specific regard to tips provided to police by anonymous sources, the Court observed:

> The strictures that inevitably accompany the "two-pronged test" cannot avoid seriously impeding the task of law enforcement . . . . If, as the Illinois Supreme Court apparently thought [in *Gates*], that test must be rigorously applied in every case, anonymous tips would be of greatly diminished value in police work. Ordinary citizens, like ordinary witnesses . . . generally do not provide extensive recitations of the basis of their everyday observations. . . . [T]he veracity of persons supplying anonymous tips is by hypothesis largely unknown and unknowable. As a result, anonymous tips seldom could survive a rigorous application of either of the *Spinelli* prongs. Yet such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise "perfect crimes." While a conscientious assessment of the basis of crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not. [*Id.*, 237-238.]

In analyzing whether there is sufficient corroboration for an informant's tip to constitute probable cause, the *Gates* Court determined that the relevant inquiry

is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of *noncriminal* acts. *Id.*, 243-244, n 13.

The *Gates* Court characterized its earlier decision in *Draper v United States*, 358 US 307; 79 S Ct 329; 3 L Ed 2d 327 (1959), as the "classic case on the value of corroborative efforts of police officials." *Id.*, 242. In *Draper*, an informant told police that the defendant would be arriving with drugs on a train from Denver on the morning of either December 8 or 9. The informant also provided a physical description. The Supreme Court said that because police personally verified every facet of the information except for whether the defendant actually possessed drugs, they could presume that uncorroborated fact, and thus had reasonable grounds to arrest the defendant.[7]

The Court concluded that the showing of probable cause in *Gates* was as compelling as that in *Draper*. An anonymous letter writer had informed the police that the defendants, a married couple from Illinois, were selling drugs. The letter explained that the wife would drive their car to Florida on a certain date to pick up drugs, and the husband would fly down a few days later to drive the car back to Illinois. The letter also stated that the defendants had more than $100,000 worth of drugs in their basement. Police verified the defendants' address and learned that the husband had reserved a seat on a flight to Florida. A subsequent surveillance confirmed that the husband stayed overnight in a Florida motel room that was

---

[7] The same analysis applies to a determination of probable cause for a search as applies to a determination of probable cause for an arrest. See, e.g., *Faucett*, 442 Mich 162, and *Spinelli*, 393 US 417, n 5.

registered in his wife's name, and departed with a woman the next morning, traveling northbound on an interstate highway in a car bearing Illinois plates and registered to him.[8]

Although the authorities in *Gates* had obtained a warrant, the Supreme Court clarified that the same probable-cause analysis applies when police act without a warrant. *Gates*, 462 US 242, citing *Jones v United States*, 362 US 257, 269; 80 S Ct 725; 4 L Ed 2d 697 (1960), for the proposition that an officer making an arrest without a warrant may rely on a tip, rather than direct observations, as long as the tip is reasonably corroborated by other matters within the officer's knowledge. See also *McCray v Illinois*, 386 US 300; 87 S Ct 1056; 18 L Ed 2d 62 (1967).[9]

The Sixth Circuit Court of Appeals discussed the role of independent corroboration of a tip in *United States v Pasquarille*, 20 F3d 682 (CA 6, 1994). In *Pasquarille*, police arrested the defendant on the basis of a telephone tip that he was selling cocaine. The Court observed that this type of information, like all other

---

[8] With regard to the fact that the informant had said that the wife would fly back from Florida, the *Gates* majority concluded that this mistake did not undermine the probative value of the entire tip. The Court explained that informants are not required to be infallible, and probable cause does not require perfection. *Id.*, 245, n 14.

[9] In *McCray*, a confidential informant advised police that the defendant was selling narcotics at a certain location. The informant rode with the officers to the site, but departed after pointing out the defendant. Police then observed the defendant separate from the woman with whom he was walking and briefly meet with a man. After spotting the patrol car, the defendant walked hurriedly between two buildings. The officers apprehended the defendant and discovered heroin in a cigarette package found on his person. The Court upheld the ruling of the Illinois Supreme Court that the defendant was not entitled to learn the identity of the informant for purposes of his motion to suppress the evidence. The case focused on the so-called "informer's privilege," an issue that we do not reach in the instant case.

clues and evidence, may vary greatly in value and reliability. While an informant's "veracity" or "reliability" and "basis of knowledge" are relevant considerations, the absence of one does not render the tip insufficient to support a determination of probable cause. The Court noted that police had verified every aspect of the tip except for whether the suspected vehicle was involved in selling narcotics. Emphasizing that the caller had identified himself as a transporter of prisoners and related that he had observed an attempted drug sale, the Court concluded that the police had probable cause to believe that the defendant's vehicle contained contraband.

C

Michigan case law tracks federal precedent regarding the existence of probable cause on the basis of an anonymous tip. In *People v Walker*, 401 Mich 572; 259 NW2d 1 (1977), this Court considered whether police had probable cause to arrest the defendant without a warrant, where an anonymous telephone tip alerted them to the drug activity. At approximately 8:20 P.M., the caller reported to police that the defendant was traveling from Benton Harbor to Detroit to pick up drugs, either in a four-door bronze-colored Cadillac with Indiana plates or a four-door black-over-yellow Oldsmobile with Michigan plates. The caller informed the police that two women accompanied the defendant and they all would return to a certain residence in Benton Harbor in about five hours. Police checked official records and learned that a woman who owned a 1969 Oldsmobile with Michigan plates lived at the specified address. Through further investigation the police learned that a Cadillac was in the garage

located at the address, but not the Oldsmobile. Police then set up a surveillance and stopped the Oldsmobile at 1:00 A.M.

In finding probable cause, the *Walker* Court emphasized that an anonymous tip may support probable cause if the information is sufficiently corroborated by independent sources. Applying the *Aguilar-Spinelli* test, the Court concluded that the tip had described the criminal venture in sufficient detail that police could reasonably infer that they were relying on something more substantial than a casual rumor or information based on an offhand remark heard at a neighborhood bar. The Court explained that the informant described the defendant's trip, its illegal purpose, and the two cars. The informant also provided the approximate time of the defendant's return, the number of people traveling, and the address of eventual destination. Although police initially had no reason to believe that the tip was not a complete fabrication, they reasonably could conclude, after confirming several details, that the informant's reliability had been clearly demonstrated.[10]

V

Turning to the facts of the instant case, we note that Officer Turner had been a police officer for seven and a half years, and had spent four of those years on the surveillance and narcotics team. She had additional training with the Drug Enforcement Agency

---

[10] There is no question that, having survived rigid application of the *Aguilar-Spinelli* test, the circumstances in *Walker* also would satisfy the flexible *Gates* test. See *Gates*, 462 US 242, n 12, in which the Court made a similar observation about *Draper*.

and at several schools. The court must examine the officer's observations in light of her experience and training, not in a vacuum or from a hypertechnical perspective. 1 LaFave, Search & Seizure (2d ed), § 3.2(c), p 571.

Drawing on her experience and training, Officer Turner testified that the comings and goings of vehicles on Clubhouse Lane at a late hour on a Wednesday night, with the occupants staying only a short period, was consistent with drug trafficking. The departure of one man wearing dark clothing and carrying a black bag, which he put in the trunk of his vehicle, also comported with her prior experience and with the undercover officer's tip that two persons would leave the house with marijuana for later distribution.

In addition, Officer Turner had verified through official records the addresses and names provided by the undercover police officer. She determined that the defendant—one of those identified as involved in the anticipated drug transaction—had been mentioned in past investigations of marijuana dealing. Moreover, before asking Officer Farley to stop the defendant's car, Officer Turner had verified that the vehicle was registered to someone who either had the same last name as the defendant or lived at the same address.

Under the totality of the circumstances, the information provided by the undercover police officer was sufficiently corroborated and supplemented by Officer Turner's own investigation to warrant a finding of probable cause, i.e., "a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 238; *United States v Sokolow*, 490 US 1, 7; 109 S Ct 1581; 104 L Ed 2d 1 (1989). It

was thus unnecessary to produce the undercover officer whose telephone call prompted Officer Turner's investigation. That the trial court requested an affidavit from the undercover officer and may have relied on it in denying the defendant's motion does not compel a different result. The affidavit simply confirmed Officer Turner's testimony that she had received the information.[11]

Under these circumstances, the Court of Appeals erred in remanding this case for a supplemental hearing because there was probable cause to support the search of the defendant's vehicle. We thus vacate the

---

[11] The Court of Appeals recognized that the affidavit was inconsistent in certain respects with the observations of Officer Turner. For example, although the undercover police officer's source told him that three parties, including a resident of the home on Clubhouse Lane, would divide the marijuana and then depart, Officer Turner observed a greater number of cars at the residence on the night in question. This is not inconsistent with the information provided, however—the tip concerned only the dividing of marijuana for distribution at night's end. Far from discrediting the information provided, the fact that other cars were present was further indication of possible drug sales, and did not negate the allegation that the dealers would split the marijuana at the conclusion of the evening. The Court of Appeals also emphasized the statement in the undercover officer's affidavit that he had been told the marijuana would be present on November 14, 1995, whereas the surveillance and search occurred on November 15, 1995. The discrepancy, however, is not significant. First, the affidavit was not prepared to secure a search warrant in November 1995, but rather at the request of the judge presiding at the suppression hearing four months later. Indeed, it appears from our examination of the affidavit that it initially bore the typed date "November 11," but was corrected in ink and initialed by the undercover officer. In any event, Officer Turner testified at the suppression hearing that she received the telephone tip from the undercover officer on the night of November 15, 1995, regarding activity that was to occur that night, and set up her surveillance within forty-five minutes of completing the conversation. The discrepancy thus appears to have been a mistake and, in view of the circumstances, was not an important flaw.

opinion of the Court of Appeals, and affirm the judgment of the circuit court.[12] MCR 7.301(F)(1).

WEAVER, C.J., and BRICKLEY, TAYLOR, CORRIGAN, and YOUNG, JJ., concurred.

CAVANAGH and KELLY, JJ., concurred in the result only.

---

[12] In light of our disposition of this case, we do not reach the questions whether the protections of the Confrontation Clause extend to a pretrial suppression hearing, or whether the so-called "informer's privilege" applies to an undercover police officer. We emphasize, however, that we have vacated the opinion of the Court of Appeals in its entirety.