# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY EDWARD LAMAR,

Defendant-Appellant.

UNPUBLISHED
December 20, 2016

No. 328729
Kalkaska Circuit Court
LC No. 14-003676-FH

Before: BORRELLO, P.J., and SAWYER and MARKEY, JJ.

PER CURIAM.

Defendant was convicted following a jury trial of resisting and obstructing a police officer, MCL 750.81d(1), and possession of marijuana, MCL 333.7403(2)(d). He appeals by right solely challenging the trial court's denial of his motion to suppress evidence. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises from a stop effectuated by Michigan State Police Trooper Karen Roy of defendant's vehicle for a "defective loud exhaust." Trooper Roy was assigned "to the 7th District Hometown Security Team (HST)." She explained that law enforcement personnel assigned to HST are "out looking for drug activity, guns, any criminal activity." According to Trooper Roy, "[w]e look for vehicles that have equipment problems, make patrol stops based on that."

On the day defendant was stopped, Trooper Roy was stationed in her patrol car "right on the edge of the highway, sitting in a private drive," when she heard the muffler of defendant's vehicle as he drove past. Upon approaching defendant's vehicle, Trooper Roy "detected a strong odor of marijuana inside the car" and asked defendant to exit the vehicle. Eventually, defendant consented to a search of his vehicle. Trooper Roy testified at trial that the search produced "a grinder," which was later determined to contain marijuana.

After a suppression hearing, the trial court found that "it is likely the exhaust on the Defendant's truck was functioning properly on the day of the traffic stop," considering the

-1-

testimony of the witnesses defendant produced at the hearing.[1]  However, the trial court denied defendant's motion to suppress, reasoning that "[w]hether or not the Defendant's truck actually had a malfunctioning exhaust at the time is not relevant to the question of whether Tpr. Roy had reasonable cause to initiate a traffic stop."  The trial court summarized Trooper Roy's testimony and surmised that "the Defendant is asking this Court to essentially find that Tpr. Roy deliberately lied under oath at the preliminary examination and her police report."  The court found no basis to make such a finding.

## II.  ANALYSIS

On appeal, defendant challenges whether the trooper had objective, articulable reasons for effectuating the stop of defendant's motor vehicle.

We review a trial court's factual findings in a suppression hearing for clear error, which occurs when the Court is "left with a definite and firm conviction that a mistake was made." *People v Lewis*, 251 Mich App 58, 67; 649 NW2d 792 (2002).  But "the lower court's ultimate ruling with regard to the motion to suppress is reviewed de novo because the application of constitutional standards regarding searches and seizures to undisputed facts is entitled to less deference." *Id*. at 67-68 (citations omitted).

"[B]oth the United States Constitution and the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Hyde*, 285 Mich App 428, 438; 775 NW2d 833 (2009) (internal quotation marks and citations omitted).  That right flows from the Fourth Amendment of the United States Constitution and article 1, § 11 of the Michigan Constitution. *People v Levine*, 461 Mich 172, 178; 600 NW2d 622 (1999). "[A]bsent compelling reasons, art 1, § 11 provides the same protection as the Fourth Amendment." *Id*.

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v North Carolina*, ___ US ___, ___; 135 S Ct 530, 536; 190 L Ed 2d 475 (2014).  "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v United States*, 517 US 806, 810; 116 S Ct 1769; 135 L Ed 2d 89 (1996).  "In order to effectuate a valid traffic stop, a police officer must have an articulable and reasonable suspicion that a vehicle or one of its occupants is subject to seizure for a violation of law." *People v Williams*, 236 Mich App 610, 612; 601 NW2d 138 (1999).  "[O]n reasonable

---

[1] At the suppression hearing, the vehicle's former owner testified that she had the vehicle's exhaust repaired in January 2013 and that she sold the vehicle to defendant in March 2014.  The mechanic who performed that repair testified that the vehicle's exhaust was in "good working order" and not emitting "excessive or unusual noise" after the repair.  A mechanic who inspected defendant's vehicle less than two weeks after the traffic stop testified that the vehicle's exhaust system was not emitting defective noise and that there was "no evidence of any recent exhaust repairs."

grounds shown, a police officer may stop and inspect a motor vehicle for an equipment violation." *Id*.

"Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996) (citation omitted). A reasonable suspicion is established "when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v California*, ___ US ___; 134 S Ct 1683, 1687; 188 L Ed 2d 680 (2014). "[W]hether there was reasonable suspicion to justify a stop must be made on a case-by-case basis, evaluated under the totality of the circumstances, and based on common sense." *People v Dillon*, 296 Mich App 506, 508; 822 NW2d 611 (2012).

Defendant's main arguments on appeal center on his assertions that the trooper's assessment as to why she stopped defendant was a mere pretext. Additionally, defendant argues that because the trooper had no formal training relative to the proper decibel level of vehicle exhaust systems, her testimony was tantamount to either a fabrication of the truth or mere speculation.

The issues of pretextual stops have long been decided. In *Whren v United States*, 517 US 806, 116 S Ct 1769, 135 L Ed2d 89 (1996) plainclothes police officers patrolling a high drug and crime area in an unmarked vehicle observed a truck driven by the defendant waiting at a stop sign for an unusually long time. Suddenly, the truck turned without signaling, and one of the officers stopped the vehicle to warn the driver about the traffic violation. While approaching the vehicle, the officer observed crack cocaine in defendant's hands. Defendant argued that the traffic stop was pretextual and that the evidence should therefore be suppressed. The United States Supreme Court disagreed, holding that police officers with probable cause to believe that a traffic violation has occurred may stop a vehicle even though the stop is a prextext to search for evidence of other, more serious crimes, stating, in relevant part: "Subjective intentions play no role in ordinary probable-cause Fourth Amendment analysis. 517 US at 813. It is important to note, however, that pretext is irrelevant only when sufficient legal cause exists to effectuate the stop. Hence defendant's next argument is that the trooper lacked sufficient legal cause to effectuate the stop.

On this issue, defendant argues that Trooper Roy did not have a reasonable suspicion that he was violating the law because she did not demonstrate knowledge of the specific noise limitations for motor vehicles contained in § 707c(1) of the Michigan Vehicle Code (MVC), MCL 257.1 *et seq*., and she did not have equipment or training to corroborate her suspicion that his vehicle was emitting a sound in excess of those limits. Defendant's argument presumes that Trooper Roy suspected he was violating MCL 257.707c(1), but she made no mention of the statutory noise limits at the preliminary hearing. Rather, she testified that she heard defendant's muffler as he passed, which was not "normal for a vehicle that . . . has a functioning muffler," and initiated a traffic stop for "a defective loud exhaust." While a loud exhaust may run afoul of the noise limitations found in MCL 257.707c(1), there are other provisions of the MVC that govern mufflers and exhaust systems that do not reference those limitations. For example, MCL 257.707 requires that a motor vehicle "be equipped with a muffler in good working order and in constant operation to prevent excessive or unusual noise and annoying smoke" and "be equipped

with a properly operating exhaust system . . . ."  MCL 257.707(1) and (3).  Similarly, MCL 257.707c(3) prohibits a person from "operat[ing] a vehicle on a highway or street if the vehicle has a defect in the exhaust system which affects sound reduction, is not equipped with a muffler or other noise dissipative device, or is equipped with a cutout, bypass, amplifier, or a similar device."

Trooper Roy testified that even though there were other vehicles on the road, she was "certain" that it was defendant's vehicle making the loud noise "[b]ecause I watched him go by me.  I could hear the vehicle as it passed my location."  That there were other vehicles in the area providing a contrast in sounds when Trooper Roy made an auditory observation of defendant's vehicle demonstrated "a particularized and objective basis for suspecting" the trooper's suspicion that defendant was in violation the MVC.  *Navarette*, 134 S Ct at 1687.  As this Court has noted in numerous decisions, an ordinary traffic stop is governed by the same standards as any other stop.  "A traffic stop is valid under the Fourth Amendment . . . if the police officer has reasonable suspicion that a traffic or equipment violation has occurred or is occurring."  *United States v Botero-Ospina*, 71 F3d 783, 787 (10th Cir 1995).  Here the testimony of the trooper makes clear that she had reasonable suspicion to believe that the exhaust system of the vehicle operated by defendant was defective.  And, to the extent she may have been wrong in terms of pin-pointing the exact decibel level necessary to constitute a violation, such a "mistake" does not diminish the legality of the stop.  See *Heien*, 135 S Ct at 536.  ("[S]earches and seizures based on mistakes of fact can be reasonable.")  Additionally, and as previously stated, "[t]he subjective intent of the police officer is irrelevant to the validity of the stop."  *Dillon*, 296 Mich App at 508-509.

Affirmed.

/s/ Stephen L. Borrello
/s/ David H. Sawyer
/s/ Jane E. Markey

-4-