*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL DUANE WHITFIELD,

        Defendant-Appellant.

UNPUBLISHED
February 16, 2023

No. 360233
Kalamazoo Circuit Court
LC No. 2019-001720-FH

Before: SHAPIRO, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of two counts of assault with a dangerous weapon, MCL 750.82, two counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1), and one count of carrying a concealed weapon, MCL 750.227.[1] For the reasons stated in this opinion, we affirm.

## I. BACKGROUND

Defendant's convictions stem from the shooting of Craven Judd. The events leading up to the shooting are mostly not in dispute. The night of the shooting, Judd parked outside of Chera Briscoe's residence at about 11:00 p.m. and waited for her to come out and speak with him. When Judd arrived, defendant was parked in a truck in the driveway. When Briscoe came out of the house she entered the passenger side of the truck. Judd then went to the truck to speak with Briscoe, who told him to get away from the truck and wait for her. There was conflicting evidence as to what else was said during this exchange. In any event, Judd testified that after he returned to

---

[1] The trial court sentenced defendant to two years' imprisonment for each count of felony-firearm to run concurrently to one another and consecutively to the counts of assault with a dangerous weapon, for which the trial court sentenced defendant to 6 to 15 years' imprisonment. The trial court sentenced defendant to 4 to 25 years' imprisonment for the count of carrying a concealed weapon to run concurrently with the other four counts. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12.

his vehicle, defendant walked up to him and attempted to hit him in the forehead with a revolver. Judd testified that he blocked the gun and that defendant then shot him in the stomach.

Judd did not recognize his shooter during the attack. He described the shooter several times to investigators with the Kalamazoo Department of Public Safety (KDPS). On one occasion, he described the shooter as a middle-aged, Black man with short hair. On another occasion, Judd described the shooter as bald. He further described the shooter as having a cast on his arm with bandages wrapped around it. Two days after the shooting, Judd told the police that he learned from community members that defendant was the one who had shot him. A lead detective on the investigation created and presented a photo array to Judd. The photo array consisted of six photos depicting Black men with short hair. The detective did not know the ages of the individuals, but he believed that each photo depicted someone between the ages of 20 and 40. Defendant was depicted in one of the pictures. The detective did not know what year defendant's picture was taken or his age in the photo, but he guessed that the picture was taken in 2009 when defendant was 31 years old. Defendant contends that the photo was over 20 years old. During the photo array, the detective told Judd that he did not need to identify anyone in the lineup if he was not 100 percent positive in his selection. Within seconds of seeing the pictures, Judd indicated to the detective that he was 100 percent certain in his selection of defendant's picture.

The next day, the police obtained a warrant for defendant's arrest. Three days after the shooting, the investigators were conducting surveillance of a known address for defendant when a vehicle arrived to pick up defendant. A traffic stop was initiated and defendant was found in the passenger seat. Defendant exited the vehicle, was placed in handcuffs and searched. The driver also exited the vehicle and consented to a search of his person which produced a heroin kit and a small bag containing cocaine residue. The driver admitted to recently using cocaine. The investigators conducted a search of the front of the vehicle finding heroin in the driver's side door pocket and drug packaging material in the glove box. The investigators searched the rest of the vehicle and found a Bronson Hospital bag in the hatchback area of the vehicle. Inside the bag the investigators found: a locked safe; Bronson Hospital paperwork with defendant's name on it; a handwritten note addressed to defendant; micro zip-seal bags consistent with drug packaging; two digital scales; and a razor blade with white chunk material consistent with cocaine on its blade. An investigator opened the safe with a key found on defendant's person. Inside the safe, he found a revolver pistol wrapped in plastic wrap and burp cloth.

After his arrest, the investigators interviewed defendant. The jury heard a redacted version of the interview. During the interview, defendant eventually admitted that he was at the scene and that at some point he approached Judd at his vehicle. However, defendant maintained that Judd shot himself during a struggle with defendant.

Before his trial, defendant moved to suppress evidence of the gun found in the safe. Defendant challenged the search of the hospital bag containing the safe as a violation of the Fourth Amendment's prohibition against unreasonable searches. The trial court rejected his challenge and admitted the gun at trial. Defendant also moved to suppress Judd's identification of defendant from the photo array. Defendant challenged the photo array as unduly suggestive, arguing that the photo of defendant was too old, that Judd inconsistently described the shooter, and that the detective did not use a double-blind procedure in creating and presenting the photo array. The trial

court rejected defendant's motion to suppress, explaining that the photo array was not suggestive and that Judd had provided substantially consistent descriptions of defendant.

## II. ANALYSIS

### A. THE FOURTH AMENDMENT

Defendant first argues that the trial court erred by denying his motion to suppress the gun. Defendant contends that the search of the hospital bag found in the vehicle's hatchback area was not permitted under any exception to the warrant requirement. We disagree.[2]

The Fourth Amendment of the United States Constitution guarantees to the people the right to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." US Const, Am IV. Absent a compelling reason to impose a different interpretation, the Michigan Constitution, Const 1963, art 1, § 11, is construed to provide the same protection as that secured by the Fourth Amendment. *People v Levine*, 461 Mich 172, 178; 600 NW2d 622 (1999). "Generally, searches or seizures conducted without a warrant are presumptively unreasonable and, therefore, unconstitutional." *People v Barbarich*, 291 Mich App 468, 472; 807 NW2d 56 (2011). But the warrant requirement "is subject to several specifically established and well-delineated exceptions." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000).

As an initial matter, defendant spends much of his brief arguing that he had a reasonable expectation of privacy in the hospital bag and the safe inside it under *People v Mead*, 503 Mich 205; 931 NW2d 557 (2019). In *Mead*, the Michigan Supreme Court held that a passenger in a vehicle had a legitimate expectation of privacy in a backpack that he was clutching such that he had standing to bring a claim under the Fourth Amendment. *Id.* at 214. The Supreme Court also held that the search of the passenger's backpack was unlawful, reasoning that the driver's consent to search the vehicle did not extend to the backpack because the driver had no apparent authority over the backpack. *Id.* at 217-219. In this case, the prosecution does not challenge defendant's standing to challenge the search of the hospital bag and safe. Further, the investigators did not rely on the driver's consent as the basis for the search. Rather, the lawfulness of the search in this case turns on exceptions to the warrant requirement that were not at issue in *Mead*. For these reasons, *Mead* does not resolve the issue before us.

The prosecution relies on two exceptions to the warrant requirement: the "search incident to arrest" exception, and the automobile exception. Under the search incident to arrest exception, "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to

---

[2] We review de novo a trial court's ruling on a motion to suppress. *People v Davis*, 250 Mich App 357, 362; 649 NW2d 94 (2002). A trial court's factual findings are reviewed for clear error. *Id.* "Clear error occurs if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Johnson*, 502 Mich 541, 565; 918 NW2d 676 (2018) (quotation marks and citation omitted). We review de novo the trial court's interpretation of the law or the application of a constitutional standard. See *People v Attebury*, 463 Mich 662, 668; 624 NW2d 912 (2001).

believe the vehicle contains evidence of the offense of arrest." *People v Tavernier*, 295 Mich App 582, 584-585; 815 NW2d 154 (2012), quoting *United States v Gant*, 556 US 332, 351; 129 S Ct 1710; 173 L Ed 2d 485 (2009). At the time of the search, defendant was not within reaching distance of the passenger compartment but rather was sitting on the curb in handcuffs. Accordingly, officer safety did not justify the search. Moreover, there is no record evidence indicating that the officers had a reasonable belief when the search began that the vehicle contained evidence of the offense defendant was being arrested for. The only connection between defendant and the subject vehicle is that the vehicle arrived at a known address for defendant to pick him up. For these reasons, we agree with defendant that search incident to arrest exception does not apply in this case.

However, the automobile exception is a separate and distinct exception. See *Gant*, 556 US at 346-347. Under the automobile exception, police may search a vehicle without a warrant "if probable cause exists to believe it contains contraband." *People v Clark*, 220 Mich App 240, 242; 559 NW2d 78 (1996). Partly because of the lessened expectation of privacy in an automobile, "if police have probable cause to search a car, they need not get a search warrant first even if they have time and opportunity." *Id*. (citation and quotation marks omitted). "This ability to search without a warrant extends to closed containers in the vehicle that might conceal the object of the search, such as [a] duffle bag." *Kazmierczak*, 461 Mich at 422, citing *United States v Ross*, 456 US 798, 825; 102 S Ct 2157; 72 L Ed 2d 572 (1982). Probable cause exists when "there is a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place." *Kazmierczak*, 461 Mich at 417 (quotation marks and citation omitted).

In this case, the driver consented to a search of his person after stepping out of the vehicle. The investigators found a heroin kit and a small, plastic bag containing what the driver admitted was cocaine residue. The driver also admitted to using cocaine before picking up defendant. The discovery of drug paraphernalia and residue on the driver's person established probable cause to search the vehicle and containers located therein that might conceal further evidence of drug possession. See *id*. at 422. The investigators' search of the front of vehicle produced a baggie of suspected heroin and further drug paraphernalia. The driver told the officers that he was also a heroin user and that if the bag did indeed contain heroin, he had forgotten that it was in the vehicle. These findings provided further probable cause to believe that the hatchback area of the vehicle contained contraband. In the hatchback area, the investigators saw a bag from Bronson Hospital. As noted, upon opening the bag, the investigators found a micro zip-seal bag (an item commonly used for drug packaging), two digital scales with drug residue on them, and a razor blade with possible cocaine residue on it. These discoveries provided further probable cause to search the safe in which the gun was found for contraband. Accordingly, the automobile exception to the warrant requirement permitted the search of the safe, and the trial court did not err by denying defendant's motion to suppress.

## B. PHOTO ARRAY IDENTIFICATION

Defendant also argues that the trial court erred by denying his motion to suppress the out-of-court identification, contending that the police provided Judd with an unnecessarily suggestive photo lineup resulting in an unreliable identification that tainted all subsequent identifications by Judd. We again disagree.

When a defendant moves to suppress an out-of-court identification, he or she "must show that the pretrial identification procedure was so suggestive in light of the totality of the circumstances that it led to a substantial likelihood of misidentification." *People v Posey*, 334 Mich App 338, 347; 964 NW2d 862 (2020) (quotation marks and citation omitted). "Exclusion of evidence of an identification is required when (1) the identification procedure was suggestive, (2) the suggestive nature of the procedure was unnecessary, and (3) the identification was unreliable." *People v Sammons*, 505 Mich 31, 41; 949 NW2d 36 (2020). In general, a "photo spread is not suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *People v Kurylczyk*, 443 Mich 289, 304; 505 NW2d 528 (1993) (quotation marks and citation omitted). An improper suggestion may arise when "differences in the photographs led to a substantial likelihood of misidentification. In such cases, witnesses typically select a defendant on the basis of some external characteristic, rather than on the basis of the defendant's looks." *Id*. at 305. Improper procedure or comments by police can render an identification procedure suggestive. *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998).

In this case, defendant does not argue that the other men chosen for the lineup were physically dissimilar, or that there was something distinctive about defendant's photograph that made it stand out from the others. Instead, defendant argues that the photo array was suggestive because the detective chose individuals who looked like defendant as depicted in the photograph rather than Judd's description of the shooter. We first note that the photo array was "fairly representative of the defendant's physical features" as depicted in the photograph used by the officers. *Kurylczyk*, 443 Mich at 304. Judd was presented with a photo array two days after the shooting consisting of six Black men with short hair. Each of the individuals appeared to be middle-aged and had similar skin tones and wore similar plain clothing. And it was logical to use an array of photos depicting characteristics similar to defendant's as shown in the older photograph used by the detective, otherwise defendant's photograph would have stood out.

As to the decision to use an older photograph of defendant, the lead detective testified at the motion hearing that he requested a recent photograph from the federal detention facility where defendant had been imprisoned. However, the photo he received depicted defendant with glasses and jewelry. The detective explained that when the KDPS does booking photos, no glasses or jewelry are allowed. Thus, had the detective used the recent photograph where defendant is shown with a chain necklace and glasses, defendant would have been the only one in the array with those attributes. The detective therefore acted properly in declining to use the more current photo provided by the federal agency because that photo had more potential to be suggestive than the photo chosen. See *Gray*, 457 Mich at 111. The photograph of defendant used in the array, although taken many years ago, was presented along with individuals that appear to be of similar age and appearance.

Defendant further argues that the photo array was procedurally suggestive because a detective involved in the investigation prepared and presented the array in violation of department policy. Defendant argues that a double-blind procedure was required whereby the officer presenting the lineup is not involved in the investigation and does not know the identity of the alleged perpetrator. While the KDPS has adopted such a policy, the department policy *recommends* double-blind procedure; it does not mandate said procedure. A double-blind photo array is always preferable and the lack of one may in some cases be sufficient grounds to suppress.

However, in light of the adequacy of the photo array and the statements of the officer in presenting it to the complainant, we conclude that there was no basis to find that the officer engaged in suggestive behavior. See *People v Blevins*, 314 Mich App 339, 350; 886 NW2d 456 (2016). Nothing in the record shows that the detective made any suggestion to Judd of which photo to choose. Instead, the detective testified that he was careful to select a picture of defendant that did not stick out in comparison of the other photos. During the photo array, the detective explained to Judd that he should only select a photo if he was 100 percent certain of his selection. And Judd selected defendant within seconds of being presented with the photos and stated that he was 100 percent certain in his choice.

In sum, the trial court did not err by concluding that the photo array was not suggestive and denying defendant's motion to suppress. Because the photo array was not suggestive, defendant's arguments regarding the reliability of Judd's identification of defendant as the shooter do not need to be addressed. See *Sammons*, 505 Mich at 41. We nonetheless note that defendant's statements to the police place him at the scene and with Judd at the time of the shooting.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Anica Letica
/s/ Kathleen A. Feeney