*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

SHERITA ELIZABETH QUINZY,

Defendant-Appellee.

UNPUBLISHED
March 07, 2025
8:51 AM

No. 371746
Jackson Circuit Court
LC No. 2021-002334-FH

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHERITA ELIZABETH QUINZY,

Defendant-Appellant.

No. 371999
Jackson Circuit Court
LC No. 2021-002334-FH

Before: RIORDAN, P.J., and YATES and ACKERMAN, JJ.

PER CURIAM.

Michigan State Police Trooper Wyatt Peters stopped defendant's car for having no visible license plate. Defendant, Sherita Quinzy, informed Trooper Peters that she had no driver's license, and Trooper Peters saw the front-seat passenger trying to put something into the purse at her feet. Trooper Peters took defendant into custody, and another law-enforcement officer arrived to assist him. By the time the encounter ended, the two police officers had seized defendant's firearm and a bag of methamphetamine. After conducting a suppression hearing, the trial court ruled that "I'm suppressing the gun, everything else is coming in." The prosecutor filed an application for leave

-1-

to appeal, and so did defendant. We granted both applications.[1] Because we conclude that the search of the vehicle was permissible in its entirety, we affirm in part, reverse in part, and remand the case for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

Trooper Peters initiated a traffic stop when he noticed a "two door red Monte Carlo with no license plate affixed to the back" pulling out of a hotel that was known for a high rate of drug trafficking. Defendant told Trooper Peters that she had a license plate lying on the rear dash, but that she did not have her driver's license with her. Peters saw the front-seat passenger "reaching in [her] purse," and Peters testified that "it appeared that she was concealing something inside the purse." Sergeant Brett Brice testified that, upon arriving, he stepped up to the passenger side of the vehicle and observed "a white tied off plastic bag containing a crystalized substance" near the front passenger seat "which based off my training and experience was crystal methamphetamine." Trooper Peters queried the license plate and discovered that the license plate was stolen. At that point, defendant was handcuffed and placed in the front seat of Trooper Peters's patrol car.

Trooper Peters and Sergeant Brice walked back to the vehicle, and footage from Trooper Peters's vehicle camera revealed Sergeant Brice saying, "You see that bag right there, I can't tell what's in it, looks like something white is in it," referring to the bag he had seen earlier. Trooper Peters opened the passenger door, found the plastic bag, and said, "Looks like methamphetamine to me." He explained that, "[b]ased off from the probable cause that there's stolen property in the vehicle with the stolen license plate, the narcotics for the suspected methamphetamine, [he] began searching the vehicle." He affirmed that "recognizing and seeing a stolen item" gave him probable cause "to search for other stolen items."

As Trooper Peters was searching the vehicle, Sergeant Brice returned to the patrol car and stood by the passenger door. He testified that he explained to defendant the "situation of the traffic stop and why she's placed in handcuffs with regard to the stolen plate, the stuff we observed is in the car." Defendant, referring to the passenger, asked Sergeant Brice, "I couldn't get in trouble for what she did, could I?" Sergeant Brice responded that he did not want to violate defendant's rights under *Miranda*,[2] and he explained that he and Trooper Peters would advise her of her rights before questioning her. Sergeant Brice closed the patrol car's door, so defendant was left alone in the police vehicle.

Defendant maneuvered in her handcuffs until she was able to get her phone out of her back pocket. Sergeant Brice returned to the patrol car and calmly asked defendant who she was calling. Defendant answered: "My lawyer because I don't know what's going on." They continued to have

---

[1] *People v Quinzy*, unpublished order of the Court of Appeals, entered November 26, 2024 (Docket No. 371746); *People v Quinzy*, unpublished order of the Court of Appeals, entered November 26, 2024 (Docket No. 371999). We consolidated the appeals "to advance the efficient administration of the appellate process." *People v Quinzy*, unpublished order of the Court of Appeals, entered December 3, 2024 (Docket No. 371746).

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

a casual, calm conversation in which Sergeant Brice further explained to defendant why she was handcuffed. After defendant and Sergeant Brice were both silent for approximately 20 seconds, defendant told Sergeant Brice: "Just so you know, he's going to find my weapon." Sergeant Brice responded, "What?" and defendant repeated, with emphasis, "*My* weapon" and she explained that it was a "pearl-handled revolver." Sergeant Brice told Trooper Peters about the weapon, and when Sergeant Brice returned, he read defendant her *Miranda* rights. Defendant immediately affirmed that she was willing to waive her rights and answer Sergeant Brice's questions. She told Sergeant Brice that the firearm was in her bag and that she had it for protection because the passenger was a stranger whom she picked up.

After defendant was bound over on criminal charges of possession of methamphetamine, MCL 333.7403(2)(b)(*i*), and carrying a concealed weapon, MCL 750.227, she moved to suppress "all evidence found as a result of the illegal search of her vehicle, including but not limited to the methamphetamine and the .22 revolver." The trial court held an evidentiary hearing on the motion on July 9, 2024, where it granted in part, and denied in part, the relief defendant sought, stating:

> Okay, the drugs as far as the front floor, they had probable cause to believe it was incriminating evidence, it was in plain view. I do have a problem with the gun. Basically, what I'm telling you is I'm suppressing the gun, everything else is coming in. I think it all falls under plain view, and likewise the automobile exception, and search incident to arrest. The gun from the time she got put in handcuffs she should have been Mirandized at that point. She was not Mirandized, they did engage in conversations with her, the other stuff was all—would have been found. She verbalized that there was a gun there, so they went looking for the gun, and had she been Mirandized prior to that gun would be coming in. So, the drugs come in, the gun does not.

Defendant and plaintiff now each appeal.

## II. LEGAL ANALYSIS

On appeal, the prosecution challenges the trial court's suppression of defendant's firearm on the basis of a *Miranda* violation, and defendant contests the trial court's decision to permit the admission of the methamphetamine found in plain view in defendant's vehicle. When reviewing a trial court's ruling on a defendant's motion to suppress, we "will defer to the trial court's findings of historical fact, absent clear error." *People v Mendez*, 225 Mich App 381, 382; 671 NW2d 528 (1997). "A finding of historical fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*. "[W]e review de novo the trial court's ultimate ruling on the motion to suppress." *People v Williams*, 472 Mich 308, 313; 696 NW2d 636 (2005). With these standards in mind, we will first consider the prosecution's appeal of the trial court's suppression of defendant's gun, and then we will turn to defendant's appeal of the trial court's ruling denying suppression of all the other evidence seized during the warrantless search of defendant's vehicle.

## A. SUPPRESSION OF DEFENDANT'S FIREARM

The prosecution argues that the trial court erred in suppressing the gun based on a violation of *Miranda*, asserting that defendant was not subjected to custodial interrogation when she advised Sergeant Brice that her gun was in her car. Both the United States Constitution and the Michigan Constitution guarantee the right against self-incrimination. US Const, Am V; Const 1963, art 1, § 17. The United States Supreme Court's decision in *Miranda*, 384 US at 467, extended that right beyond criminal proceedings "to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." The *Miranda* decision prescribed "guidelines for law enforcement agencies and courts to follow" to protect that privilege, which include warning a suspect of the right to remain silent, that any statement made by the suspect may be used against the suspect in a court of law, and that the suspect has the right to an attorney. *Id*. at 441-442, 444-445. Warnings under *Miranda* are not required unless a suspect is subjected to custodial interrogation. *People v Elliot*, 494 Mich 292, 302; 833 NW2d 284 (2013). A suspect's statements made during a custodial interrogation are not admissible unless the suspect voluntarily, knowingly, and intelligently waived those Fifth Amendment rights. *Miranda*, 384 US at 444. See also *People v Gipson*, 287 Mich App 261, 264; 787 NW2d 126 (2010).

"Whether a person is in custody for purposes of the *Miranda* warnings requirement is a mixed question of law and fact that must be answered independently after a review of the record de novo." *People v Cortez*, 299 Mich App 679, 691; 832 NW2d 1 (2013). The analysis requires "application of the controlling legal standard to the historical facts." *Thompson v Keohane*, 516 US 99, 112; 116 S Ct 457; 133 L Ed 2d 383 (1995). Generally, custodial interrogation is defined as "questioning initiated by law enforcement officers after the accused has been taken into custody or otherwise deprived of his freedom of action in any significant way." *People v Steele*, 292 Mich App 308, 316; 806 NW2d 753 (2011). Here, defendant was in "custody" when she was restrained with handcuffs and placed in the patrol car. But the existence of custody does not dictate that the firearm and her statements must be suppressed.

The gun seized from defendant's car cannot be suppressed under the *Miranda* doctrine for several reasons. First, "[p]hysical evidence obtained as a result of an unwarned statement remains admissible as long as the statement was voluntary." *People v Campbell*, 329 Mich App 185, 205; 942 NW2d 51 (2019). Every pertinent factor in this case indicates that the statement about the gun defendant made without prompting was "voluntary." See *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988) (listing factors "the trial court should consider" when "determining whether a statement is voluntary"). Second, defendant's statement about the gun was not the result of any police questioning; she simply volunteered the information about the gun without any prompting. *People v Anderson*, 209 Mich App 527, 532; 531 NW2d 780 (1995) ("Interrogation, for purposes of *Miranda*, refers to express questioning or its functional equivalent."). Third, because the police officers on the scene had probable cause to search defendant's vehicle, defendant's firearm would inevitably have been discovered during the warrantless search of the vehicle that was permissible as a matter of law. See *People v Hyde*, 285 Mich App 428, 439-440; 775 NW2d 833 (2009) (noting that "[t]he inevitable discovery doctrine, as applied by Michigan caselaw, permits the admission of evidence . . . if it can be shown by a preponderance of the evidence that the items found would have ultimately been obtained in a constitutionally accepted manner"). Accordingly, the trial court erred when it ordered suppression of defendant's gun.

Turning next to defendant's statement to Sergeant Brice about the gun, we find no basis to suppress that volunteered comment. When defendant was handcuffed and placed in the patrol car, she was not interrogated by either officer. Trooper Peters returned to defendant's vehicle to search the car, while Sergeant Brice attempted to alleviate defendant's concerns, but he did not question her about the stolen license plate, the suspected methamphetamine, or anything else related to the traffic stop. When defendant started asking if she could get in trouble for the methamphetamine, Sergeant Brice told defendant that she had to be informed of her *Miranda* rights before they could discuss that subject, and then he walked away from the patrol car. Sergeant Brice returned to the patrol car after defendant retrieved her phone and made a call. He asked defendant who she was calling and again tried to alleviate defendant's concerns about the traffic stop, but Sergeant Brice did not ask her any further questions. Defendant voluntarily informed Sergeant Brice that she had a weapon in the vehicle after a period of silence. Sergeant Brice ended that conversation and read defendant her *Miranda* rights, which she immediately waived, before questioning her further.

The trial court improperly relied on the fact that defendant was not read her *Miranda* rights before she volunteered her statement to Sergeant Brice about the gun. See *Elliot*, 494 Mich at 302. The casual conversation between Sergeant Brice and defendant preceding *Miranda* warnings did not constitute interrogation because no "questioning" occurred. See *Steele*, 292 Mich App at 316. Sergeant Brice only asked defendant one question about a phone call that she was making; he did not question defendant any further until after he read her *Miranda* rights. Defendant voluntarily commented about the firearm in her vehicle, and after Sergeant Brice read defendant her *Miranda* rights, she immediately waived those rights and told Sergeant Brice the location of, and the reason for, her gun. In sum, Sergeant Brice did not question defendant after she was in custody because no interrogation occurred. See *Cortez*, 299 Mich App at 691. Accordingly, defendant's comment about the gun in her car may be offered against her at trial.

## B. WARRANTLESS SEARCH OF DEFENDANT'S VEHICLE

Defendant argues that the search of her vehicle was not justified by probable cause because the suspected methamphetamine did not fall under the plain-view doctrine, which "allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent." *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996). Both the "Fourth Amendment of the United States Constitution and its counterpart in the Michigan Constitution guarantee the right of persons to be secure against unreasonable searches and seizures." *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). See US Const, Am IV; Const 1963, art 1, § 11. Under the exclusionary rule, ordinarily, evidence seized in violation of the Fourth Amendment's prohibition against unreasonable searches and seizures cannot be used at trial. *People v Goldston*, 470 Mich 523, 528-529; 682 NW2d 479 (2004). "[E]vidence discovered in a search incident to an unlawful arrest may be subject to the exclusionary rule as the 'fruit of the poisonous tree.' " *People v Reese*, 281 Mich App 290, 295; 761 NW2d 405 (2008). But evidence is not "fruit of the poisonous tree" just because "it would not have come to light but for the illegal actions of the police." *Id*. (quotation marks and citation omitted). The propriety of suppression "depends on whether the evidence was discovered through exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Id*. at 295-296 (quotation marks and citations omitted).

"In order to show that a search was in compliance with the Fourth Amendment, the police must show either that they had a warrant or that their conduct fell within one of the narrow, specific exceptions to the warrant requirement." *Kazmierczak*, 461 Mich at 418. One of those exceptions "is known as the automobile or motor vehicle exception." *Id*. Under that exception, "the police may search a motor vehicle without the necessity of first obtaining a warrant if probable cause to support the search exists." *Id*. at 419. Accordingly, "a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained." *People v Levine*, 461 Mich 172, 179; 600 NW2d 622 (1999). Probable cause for issuing a search warrant exists if "there is a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *Kazmierczak*, 461 Mich at 417-418. "This ability to search [a vehicle] without a warrant extends to closed containers in the vehicle that might conceal the object of the search, such as defendant's duffle bag." *Id*. at 422. "The determination whether probable cause exists to support a search, including a search of an automobile without a warrant, should be made in a commonsense manner in light of the totality of the circumstances." *People v Garvin*, 235 Mich App 90, 102; 597 NW2d 194 (1999). Circumstantial evidence, along with any inferences arising from it, is sufficient to establish probable cause. *People v Nguyen*, 305 Mich App 740, 752; 854 NW2d 223 (2014).

Here, the record demonstrates that Trooper Peters had "a 'substantial basis' for inferring a 'fair probability' that contraband or evidence of a crime" would be found in defendant's vehicle. *Kazmierczak*, 461 Mich at 417-418. When Trooper Peters first initiated the traffic stop, defendant told him that she did not have her driver's license with her, and Trooper Peters saw the passenger "reaching into her purse" and "it appeared that she was concealing something inside the purse." Sergeant Brice testified that when he arrived, he observed "a white tied off plastic bag containing a crystalized substance" near the front passenger seat, "which based off my training and experience was crystal methamphetamine." Trooper Peters queried the license plate lying on the rear dash of defendant's car and found out that it was stolen, so he handcuffed defendant. Trooper Peters and Sergeant Brice walked back to the vehicle and looked inside the front passenger window. Sergeant Brice said: "You see that bag right there, I can't tell what's in it, looks like something white is in it." Trooper Peters opened the door, removed the bag, and stated: "looks like methamphetamine to me."

Considering the totality of the circumstances, probable cause supported Trooper Peters's search. See *Garvin*, 235 Mich App at 102. Although Trooper Peters had to look closely at the bag to identify it as methamphetamine, at that point he already had a substantial basis to conclude that contraband was inside the vehicle. Specifically, he knew that defendant had no driver's license, the vehicle contained a stolen license plate, and the passenger had made furtive gestures trying to hide something. *Kazmierczak*, 461 Mich at 417-418. Also, because Trooper Peters and Sergeant Brice had probable cause to believe that the plastic bag contained an illegal substance based on the passenger's furtive gestures and Sergeant Brice's training and experience, their search of the area where they located the plastic bag and their search of defendant's bag were both covered by the automobile exception. See *People v Bullock*, 440 Mich 15, 25; 485 NW2d 866 (1992).

Defendant contends that the footage captured at the scene demonstrates that Sergeant Brice could not identify the crystalized substance when he first saw it, and that he only testified later that he knew the substance was crystal methamphetamine. But defendant does not offer any authority to support his contention that Sergeant Brice's failure to verbalize his findings at the scene has any

impact on the credibility of his testimony about the substance.  Sergeant Brice's testimony reflects that, based on his training and experience, he had a substantial basis to infer that contraband was inside the plastic bag.  See *Kazmierczak*, 461 Mich at 417-418.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Christopher P. Yates
/s/ Matthew S. Ackerman